KEOKUK NORTHERN LINE PACKET COMPANY, *by Receiver, Appellant,* v. DAVIDSON.

1. **Corporations** : DUTIES OF DIRECTORS AND OFFICERS. The directors and officers of a corporation occupy positions of trust and must act in the utmost good faith, and they will not be allowed to deal with the corporation funds and property for their private gain.

2. —— : ——. The directors and officers of a corporation have no right to deal with themselves and for the corporation at the same time, and they must account for the profits made by the use of the company's assets, and for moneys made by a breach of trust.

3. —— : ——. The president of a packet company, after having endeavored to obtain contracts for carrying the mails for his company and failed, is not precluded from making such contracts in his own behalf, but, having done so, he must use all the facilities afforded by his company in performing them, and will not be allowed to make profit out of such use, but will be held to account to the company for all that he received for the services performed by it.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*Patterson & Crane* for appellant.

(1) The suit was properly brought by the receiver. He was still in office and authorized to maintain the suit. 13 Mo. App. 561 ; *Railroad v. Railroad,* 46 Vt. 795 ; *Jay v. DeGroat,* 17 Abb. Pr. 36, note ; *Johnson v. Beazley,* 65 Mo. 250 ; *Newman v. Mills,* 1 Hogan, 291 ; *Beverly v. Brookes,* 4 Gratt. 220 ; *Whiteside v. Pendergrast,* 2 Barb. Ch· 472 ; *Davis v. Gray,* 16 Wall. 203. (2) Under the circumstances shown in this case

equity will hold respondent a trustee for the corporation. *Ward v. Davidson*, 89 Mo. 445 ; *Barnes v. Brown*, 80 N. Y. 527, 535, and cases cited ; *Wardell v. Railroad*, 103 U. S. 657 ; *Koehlor v. Iron Co.*, 2 Black, 715 ; Lindley on Part., 590, 591 ; Perry on Trusts, sec. 427 ; Story on Agency, sec. 210 ; *Bent v. Priest*, 86 Mo. 475 ; *Tyrrell v. Bank*, 10 H. of L. 26 ; *Sloo v. Law*, 3 Blatch. 459. (3) It is not necessary to show actual or intentional fraud. *Bain v. Brown*, 56 N. Y. 285 ; *Coal Co. v. Parish*, 42 Md. 606 ; *Pearson v. Railroad*, 16 Rep. 463 ; *Brewster v. Stratman*, 4 Mo. App. 41 ; *Grumley v. Webb*, 44 Mo. 444 ; *Rea v. Copelin*, 47 Mo. 76. (4) It is no defence that respondent sought to obtain the contract for the company. *Grumley v. Webb*, 44 Mo. 444 ; *Keech v. Sanford*, Selw. Cas. in Ch. 61 ; *Gulick v. Ward*, 18 Am. Dec. 389. (5) Equity will hold a trustee in such case to account for all profits which he made or might have made out of the contracts. *Sloo v. Law*, 3 Blatch. 459 ; *Barnes v. Brown*, 80 N. Y. 535. And respondent cannot deduct any sum he may have paid Kerens. *Tool Co. v. Norris*, 2 Wall. 45. (6) The record shows that respondent has not fully accounted to the company, and that there is still a large sum due from him to it under the contract. And the presumptions are against the respondent. 2 Perry on Trusts, sec. 821 ; 1 Story's Eq. Jur. 468 ; *Hays v. Bayliss*, 82 Mo. 209 ; *Landis v. Scott*, 32 Pa. St. 498 ; *Anonymous case*, 1 Ld. Raymond, 731 ; *Campbell v. Campbell*, 8 Fed. Rep. 461 ; *Benjamin v. Ellinger*, 80 Ky. 479. (7) P. S. Davidson, as a director of the company, is affected with knowledge of the company's rights. *Railroad v. Bowler*, 9 Bush, 507 ; *Coal Co. v. Coal & Iron Co.*, 16 Md. 456 ; *Wardell v. Railroad*, 4 Dill. 330 ; affirmed, 103 U. S. 651.

*Given Campbell* for respondent.

(1) The receiver, Samuel C. Clubb, who brings this

suit, upon the face of the pleadings, has no standing in court nor lawful authority to bring this suit. R. S., secs. 948, 949, 950; *Gill v. Balis*, 72 Mo. 429, 430; High on Receivers, secs. 40, 41, 42, 288, and notes; Edwards on Receivers, 1; *McCabe v. Lewis*, 76 Mo. 296; 67 Mo. 685; 68 Mo. 179. (2) Should the court determine to hear the cause on its merits, the only question to be determined is one of fact. There is nothing under the facts in this case to distinguish it from an ordinary equity cause. It is a rule of general application, in equity and admiralty appeals, that, where there is evidence on both sides, the appellate court will defer to the findings of the chancellor, unless he has manifestly disregarded the evidence. *Sharpe v. McPike*, 62 Mo. 300; *Chouteau v. Allen*, 70 Mo. 366; *Hodges v. Black*, 76 Mo. 537; *Chapman v. McIlwrath*, 77 Mo. 43; *Gill v. Ferris*, 82 Mo. 168, 166; *Snell v. Harrison*, 83 Mo. 658; *The Richmond*, 103 U. S. 540; *The Juniata*, 93 U. S. 339; *The Lady Pike*, 21 Wall. 1; *The Wheeler*, 20 Wall. 385; *The Quickstep*, 9 Wall. 665; *The Marcellus*, 1 Black, 416. (3) Under the evidence in this case, respondent claims that no question of law can arise as to the relations and obligations of directors and officers of corporations, and that all the law cited in the brief of appellant is irrelevant, but the true rule is laid down in the following cases: *Oil Co. v. Marberry*, 91 U. S. 587; *Bent v. Priest*, 10 Mo. App. 543; s. c., 86 Mo. 475; Perry on Trusts, sec. 428; 25 Beavan, 586, 595, 596.

NORTON, C. J.—The Keokuk Northern Line Packet Company was in 1880, and for many years prior thereto, a corporation formed for the purpose of building, purchasing, employing, and using steamboats and barges for the transportation of freight and passengers upon the Mississippi river. In October, 1880, S. C. Clubb was appointed its receiver, and brought this suit to

recover from defendant the money received by him from the United States for carrying the mails on the upper Mississippi river, under two contracts made by defendant, Wm. F. Davidson, while he was president, with the Postmaster General. One of these contracts provided for the payment of $22,464 per annum for carrying the mail in steamboats six times a week during the season of open navigation, between St. Louis and Keokuk, and return, the service to begin July 1, 1879. The other provided for the payment of $71,190 per annum for carrying the mails in the same manner six times a week from St. Louis to St. Paul and return, the service to begin on July 1, 1880. William F. Davidson was the contractor in both these contracts. The plaintiff claims in his petition that said contracts were in equity the contracts of the company, and that said Davidson should be required to account for all moneys paid under them.

The answer of defendant, after denying the right of the receiver to maintain this suit, and denying that the corporation had any interest in said mail contracts or either of them, then sets up and avers that all the moneys received by him under said contracts over and above the expense incurred in receiving and collecting said moneys from the government in 1879 and 1880 were paid to plaintiff, and that said plaintiff received the full benefit of all sums paid defendant and during the time plaintiff carried said mails. On the trial plaintiff's bill was dismissed and judgment rendered for defendant, from which the plaintiff has appealed.

Waiving the question raised by the answer in reference to the right of Clubb, the receiver, to maintain this suit, two questions are left in the case, the first of which is, can the defendant as contractor for carrying said mails be required to account to plaintiff for what he received under said contract, and if so, to what extent? The second is, does the evidence show that

defendant has paid to plaintiff all the moneys received by him under said contracts above the expenses in collecting said moneys from the government, in 1879 and 1880 ?

An answer to these questions depends upon the circumstances under which these contracts were made, and the ability of plaintiff to perform the service required in carrying said mails. It appears from the evidence of Davidson that, prior to the first of July, 1879, Mr. Rhodes, at that time a director of the company, being authorized by Davidson, president of the company, went to Washington to secure a contract with the government for the company to carry the mails between St. Louis and Keokuk which resulted in a failure to get the contract. Subsequently, at the request of the defendant, Mr. Kerens went to Washington for the same purpose and also failed to accomplish it. It also appears that, about July, 1879, defendant authorized said Kerens to make another application for the company for a contract, which being refused, defendant then made an arrangement to make an application on behalf of defendant, whereby it was agreed that if defendant could get twenty thousand dollars a year Kerens was to have the excess over twenty thousand dollars, as compensation for his services in obtaining the contract, collecting the money, and making settlements with the government as Davidson's agent, said Kerens acting in that behalf under a power of attorney. This resulted in a contract between the government and Davidson for carrying the mails by boat between St. Louis and Keokuk from the first of July, 1879, for which Davidson was to receive twenty-two thousand four hundred and sixty-four dollars per annum. The evidence shows that defendant having thus become contractor employed the boats of the Keokuk Northern Line Packet Company to the extent of its capacity to perform the required service,

and that he also employed on his own account certain boats of P. S. Davidson, and of the Eagle Packet Company, to fully comply with his contract. This contract terminated the thirtieth of June, 1880, and during its continuance the plaintiff by its boats carried the mails seventy-six thousand miles, P. S. Davidson's boats about nineteen thousand five hundred, and the Eagle Packet Company about fifteen hundred miles.

It appears that, upon the termination of said contract, the plaintiff company through Mr. Kerens made application for a new contract to carry the mail from St. Louis to St. Paul and intermediate points, which being refused, defendant then, through said Kerens, succeeded in obtaining a contract to carry the mails between said points, and was to receive seventy-one thousand, one hundred and ninety dollars per annum for the service, and said Kerens was to receive, as compensation for services rendered and making settlements and collecting from the government, all in excess of fifty thousand dollars, or thirty-three and a third per cent. From the first of July, 1880, till the first of January, 1881, the evidence tends to show that the plaintiff company carried the mails under this second contract seventy-four thousand five hundred miles, P. S. Davidson's boats, forty-five hundred miles, and the Eagle Packet Company, thirty-five hundred miles. It also appears in evidence that in October, 1880, Clubb, the receiver of the Keokuk Northern Line Packet Company, refused to have anything to do with this contract, but subsequently assented to the use of the boats in carrying the mail. It also appears that the plaintiff company never operated any boats above the city of St. Louis after the first of January, 1881, and that the second contract was discontinued on the thirty-first of March, 1881, and an allowance of one month's pay allowed the contractor on its discontinuance.

It appears from the evidence that, under the first

contract for carrying the mail from the city of St. Louis to Keokuk, the government paid for the service performed, about the sum of eighteen thousand dollars; that this money was collected by Kerens, who, after deducting the charges, paid to Davidson the sum of $13,056.13. Under the second contract the government paid for the first quarter ending the thirtieth of September, 1880, $17,570.08, and for the second quarter ending the thirty-first of December, 1880, $4,333.55. This money was collected by Kerens and after deducting his charges, $14,036.44 was paid to Davidson or his agent. The evidence tended further to show that Davidson on account of mail-pay had paid into the treasury of the packet company about thirty thousand dollars.

That directors and officers of corporations occupy positions of trust, and must act in the utmost good faith, cannot be questioned. They will not be allowed to deal with the corporation funds and property for their private gain. They have no right to deal with themselves and for the corporation at the same time, and they must account for the profits made by the use of the company's assets and for moneys made by a breach of trust. *Ward v. Davidson*, 89 Mo. 458, and cases cited. Davidson, as president of the packet company, having endeavored to get these mail contracts for the company, and having failed, was not forbidden by the principle above stated from making a contract in his own behalf for carrying these mails, but after having done so, his relation to the packet company required that he should use all the facilities afforded by the packet company in performing the contract, and under the principle above announced, he will not be allowed to make profit out of such use, but will be held to account to the company for all that he received for the service performed by the company in such use. *Twin Lick Oil Co. v. Marbury*, 91 U. S. 587.

The evidence in this case shows that the boats of the

plaintiff company performed no service in carrying the mails after the first of January, 1881, and defendant is not, under the principle above announced, accountable to plaintiff for any sums received by him after that time, either on account of service thereafter, or on account of extra pay allowed for one month, after the discontinuance of the contract on the thirty-first of March, 1881. His liability to plaintiff is to be fixed by the amount of service performed by the boats of plaintiff anterior to the first of January, 1881, inasmuch as plaintiff performed no service after that time; and thus limiting his liability, if Davidson and Johnson are to be believed, every dollar received by Davidson under these contracts for services performed, not only by the boats of plaintiff but by the boats of P. S. Davidson and the Eagle Packet Company, was paid into the treasury of plaintiff, leaving defendant bound to said Davidson and the Eagle Packet Company for the number of miles the mails were carried by them respectively.

The trial court having these witnesses before it, gave credence to them and dismissed plaintiff's bill, and we see nothing in the evidence authorizing us to discredit them, and the judgment is, therefore, affirmed, all the judges concurring.