# W. W. WATSON, Respondent, v. THE SIDNEY F. WOODY PRINTING COMPANY, Appellant.

### Kansas City Court of Appeals, January 8 and 29, 1894.

1. **Corporations**: STOCK: PERSONALTY: CERTIFICATE. Stock in a corporation is personal property, and the certificate is only evidence of the title thereto; and it is a misuse of terms to designate certificates of stock negotiable paper in the sense in which such term is applied to commercial paper. Such stock, however, is considered transferred when the certificate is signed.

2. **Collateral Securities**: PRE-EXISTING DEBT: NEGOTIABLE OR NON-NEGOTIABLE PAPER. A transfer of personal property as security for an antecedent debt, does not render the transferee a *bona fide* purchaser for value, and this is so whether the security is negotiable or not.

3. ———: EXTENTION OF TIME, OR NOVATION: JURY QUESTION. If when personal property is put up as collateral security for an antecedent debt there should be an extention of time of payment of the principal debt, then the transferee will be treated as a *bona fide* purchaser, and will hold the same disincumbered of all secret equities between the original parties if he be without notice of such equities; and if there is conflict of evidence as to such notice, the question should go to the jury.

4. **Corporation**: TITLE TO STOCK: ESTOPPEL. One who as purchaser or lender gives value on the faith of a certificate of stock, authenticated by the seal of the corporation and the signatures of the proper officers, acquires the equitable title and may require the corporation to transfer the stock to him or respond in damages for the default, and no secret equities, fraud or misappropriation can be set up by the corporation to his prejudice or loss of the pledgee or purchaser without notice.

5. **Evidence**: CORPORATION BY-LAWS: BOARD OF DIRECTORS. The stockholders should adopt by-laws and the board of directors have no such power, and by-laws adopted by the board cannot be admitted in evidence.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*Kagy & Bremermann* for appellant.

(1) The court erred in peremptorily directing the jury to find for the plaintiff. The evidence was conflicting on a material point and the jury are the sole judges of the credibility of the witnesses. *Patton v. Pierce*, 25 Mo. App. 59; *Taylor v. Short*, 38 *Ibid.* 21; *Twohey v. Fruin*, 96 Mo. 104. (2) Stock certificates are personal property and denied the attributes of negotiability such as characterize bills of exchange and promissory notes. In Missouri the statute fixes the character of negotiable instruments and defines what are negotiable. R. S. 1889, sec. 733; *Pollock v. Bank*, 74 N. Y. 274; *Railroad v. Howard*, 7 Wall. 302; *Swaw v. Spencer*, 100 Mass. 382; *Clark v. Coal Co.*, 17 L. R. annotated, 562, and note; Cook on Stockholders, 412; Lowell on Transportation Stock, sec. 129; *Chouteau v. Allen*, 70 Mo. 290. (3) Paragraph VI. of the by-laws reads: "The stock of this company shall be transferred only on the books of the company, and any transfer of stock shall be subject to the lien of the company thereon for any indebtedness due the company from the holder." Plaintiff took subject to, and with notice of, this by-law. Beach on Private Corp., sec. 644, cases cited, note 6; *Ins. Co. v. Goodfellow*, 9 Mo. 144; *Bank v. Bank*, 45 Mo. 513; *Spurlock v. Railroad*, 61 Mo. 319; *Railroad v. Schuyler*, 34 N. Y. 30. (4) The purchaser of a certificate of stock has no better title than the seller had. The stock, being personal property, is subject to the rules of law relating to such property. *Bank v. Bank*, 45 Mo. 513; *Ins. Co. v. Goodfellow*, 13 Mo. 149; *Bank v. Railroad*, 13 N. Y. 599; *Anderson v. Nichols*, 28 N. Y. 535. (5) The pledge, if at all, was for a pre-existing debt, hence a new consideration was necessary to make plaintiff a holder for value. None was shown by the evidence.

*Goodman v. Simmons*, 19 Mo. 107; *Nappa Wine Co. v. Rinehart*, 42 Mo. App. 171; *Conrad v. Fisher*, 37 Mo. App. 352; *Dure v. Marsden*, 88 Mo. 512.

*R. L. Yeager* for respondent.

(1) There was no conflict of evidence on any material point at issue. There were no by-laws. Directors cannot adopt by-laws under the statutes as they existed. The corporation, viz., stockholders, can only make by-laws. The pretended by-laws not having been legally adopted, were properly excluded. Revised Statutes, 1889, sec. 2508; *Carroll v. Bank*, 8 Mo. App. 249; *Savings Ass'n v. Printing Co.*, 25 Mo. App. 642; Beach on Priv. Corp., sec. 311. (2) The company is estopped from denying the issue of the stock, and that the same was not paid in full. Corporations, like persons, are liable for the acts of their agents. Even upon their own theory, they placed the power in Curtis to perpetrate a fraud, and they will not be heard to avail themselves of the wrongful acts of their agents. Where one, of two or more persons, must suffer loss, it must fall upon him whose conduct made it possible for the loss to occur. *Otis, Adm'r, v. Gardner et al.*, 105 Ill. 436; Colebrooke on Coll. Secu., secs. 312 to 317, and cases cited. (3) While, technically speaking, stocks are not negotiable they are *quasi* negotiable, and under the rule almost universally laid down, a *bona fide* purchaser is protected by estoppel, in almost every case in which he would be, as the holder of a negotiable instrument, and said purchaser will take free of all equities. *Winter v. Mining Co.*, 53 Cal. 428; Colebrooke on Coll. Secu., secs. 265, 266; Beach on Priv. Corp., sec. 678 and cases cited. (4) The appellant is estopped from denying the issue and delivery of the stock, by the acts of their authorized agent. Colebrooke on Coll. Secu., sec. 314, note 4; *Willis v. Railroad*, 13 Penn. (Phila.) 33.

GILL, J.—This is an action for damages, based on the refusal of the defendant corporation to recognize plaintiff's ownership of ten shares of its capital stock.

The material facts, in so far as concerns this case, may be stated as follows:   In February, 1892, Watson, as president of a bank at Salina, Kansas, loaned $5,000 to one M. C. Curtis, who was then assistant cashier of the American National Bank at Kansas City. Curtis gave his note to the Kansas bank, payable six months after date, and to secure the same pledged certain collateral paper.   Shortly thereafter (in the early part of March, 1892) the defendant corporation was organized with an alleged paid up capital of $25,000, and the said Curtis was named as an original taker of ten shares of stock of $100 each, par value.   Certificates of stock were made out and issued in the usual manner, and among them was one to said Curtis with this statement on its face:   "This is to certify that Millard C. Curtis is the owner of ten shares, fully paid, of the capital stock of the Sidney F. Woody Printing Company of the par value of $100 each," etc.   Dated at Kansas City, Missouri, this March 18, 1892. [Signed] SIDNEY F. WOODY, President.

Attested by the secretary and seal of the corporation attached.

On or about the date of this certificate, Woody, the president of the corporation, detached the same from the stock book, took it to Curtis at his place of business and requested payment of the subscription price of $1,000.   Curtis made some excuse for nonpayment at the time and asked Woody to leave the certificate with him that he might look it over, promising to fix the matter up shortly, etc.   The certificate for the ten shares was left with Curtis, but the stock was never paid for and it appears that Woody did not intend to deliver the certificate until it was paid for.

About this time Curtis lost his position in the bank at Kansas City with which he had been connected, rumors of his insolvency, etc., were circulated, and plaintiff Watson, came to Kansas City and demanded additional security for the claim his bank had against Curtis. To this Curtis yielded, and in April, 1892, indorsed and turned over to Watson the certificate of stock for the ten shares in the defendant corporation.

Matters remained in this condition until in August, 1892, (the maturity of the note given by Curtis to Watson's bank), when Watson went to Chicago (where Curtis then resided) and arrangements were made for a thirty day extension—Curtis giving a renewal note, and along with it making a deed of trust, or pledge, by which the ten shares of stock and other collaterals were conveyed to secure the payment thereof.

On the part of the defendant, there was evidence tending to prove that before Watson arranged for the renewal in Chicago, he had been informed by the defendant's officers of the fraudulent manner in which Curtis had gotten possession of the stock certificate; that he had not paid anything therefor and that the corporation meant to contest any right in Curtis to said stock. On the other hand, Watson contradicted this testimony and claimed that he had no such notice.

Curtis failed to pay the renewal note given at Chicago in August according to its terms; the ten shares of stock, with other collaterals, were sold by the trustee at public sale and plaintiff was the purchaser. He forthwith presented the endorsed certificate and demanded another in his own name. Defendant declined to recognize the claim for stock, claiming the certificate was fraudulently procured and that there had never been anything paid on account thereof to the corporation.

The trial court, on evidence tending to prove the foregoing, peremptorily instructed the jury to find for the plaintiff. The jury returned a verdict for plaintiff in the sum of $1,000, and from a judgment thereon defendant appealed.

I. It is for us to decide whether or not the evidence in this case—the tenor of which we have given in the foregoing statement—tended to establish any defense. The lower court held that it did not, and the correctness of that ruling is here for our consideration..

The case is this: Curtis by deceit and fraud (and without having paid anything therefor) procured the issue to himself of a certificate of stock in the defendant company, and which on its face purported to have been paid up. After thus wrongfully getting possession of the certificate, and while in the apparent ownership of the stock, Curtis transferred the same by a blank endorsement to the bank at Salina, Kansas, as collateral security for a pre-existing debt which he owed the bank. About four months after this original transfer, the note which the bank held against Curtis matured and it was renewed for thirty days longer, Curtis mortgaging or repledging the same stock to secure the new note. When this last pledge or mortgage was made the pledgee or mortgagee had notice of the fraud practiced by Curtis in securing the certificate, but when the original pledge was made the bank had no notice of such fraud. Curtis failing to pay the renewal note at the end of the thirty days' extension, the mortgagee or pledgee sold the stock and plaintiff Watson became the purchaser.

The question is, did Watson become the owner of the ten shares of stock free of all equities or claims by the defendant corporation.

It must be conceded, under the circumstances, that so long as the stock certificate was held by Curtis it

Watson v. Woody Printing Co.

justly and equitably represented no interest in the corporation, and could be the basis of no claim by him. For (to use language warranted by the testimony) he held the certificate through and by means of a felony—obtaining goods under false pretenses. We assume, too, that Watson can claim only such title under the mortgagee's or pledgee's sale as was in the mortgagee or pledgee. So, then, it comes to this: did the transferee bank acquire any right or title to the stock represented by the certificate superior to that held by the transferrer Curtis? In other words, did the bank take an assignment of the stock relieved of all equities existing at the date of the transfer between the Woody corporation and Curtis?

Something is said in briefs of counsel as to the nature of a certificate of stock—whether or not it belongs to that class of instruments called *negotiable* or *quasi negotiable*, etc. As we view it, the discussion has little to do with the merits of this case. Stock in a corporation is personal property, and the certificate is only evidence of the title thereto. It partakes of the nature of a deed to real estate; is simply evidence of title, nothing more. The stock certificates are the declarations in writing by the company's officers as to who are entitled to participate in its benefits—its profits or losses, the latter being limited by the extent of stock owned. It is then a misuse of terms to designate certificates of stock, *negotiable paper*, in the sense in which such term is applied to commercial notes, bonds and the like. Differing however from other muniments of title, the stock is considered as transferred when the certificate (the paper evidencing such title) is assigned.

Returning to the point that must determine this controversy, what title to this stock did the Saline bank get by the assignment of Curtis to it in April, 1892? Unless protected under the equitable doctrine

as a *bona fide* purchaser for value, the bank only acquired such title as Curtis had. And it is clearly not entitled to such protection since it took the transfer only as collateral security for a pre-existing debt. The rule is well settled that a transfer of personal property as security for an antecedent debt does not render the transferee a *bona fide* purchaser for value, "since the creditor parts with no value, surrenders no right and places himself in no worse legal position than before." 2 Pom. Eq. [2 Ed.], sec. 749. This is the doctrine in Missouri, even as applied to the assignment of *negotiable paper* to secure a pre-existing debt. So that, were we to concede the same indulgence to certificates of stock as is extended to commercial paper, the transferee bank could not invoke the protection awarded a *bona fide* purchaser. *Goodman v. Simonds*, 19 Mo. 106; *Logan v. Smith*, 62 Mo. 455; *Deere v. Marsden*, 88 Mo. 512; *Crawford v. Spencer*, 92 Mo. 499; *Napa Valley Wine Co. v. Rinehart*, 42 Mo. App. 171, and authorities cited.

Since then, when the bank took a transfer of this property in April, 1892, it was accepted as mere additional collateral security for the Curtis note made the preceding February, without any consideration then passing between the parties, the claim to the stock was taken subject to the same equities and defenses that existed while it was in the hands of Curtis.

II. This brings us now to the second period, to-wit, August, 1892, when a new arrangement was effected. The note of Curtis to the bank having matured, the parties agreed on an extension of time—a new note for thirty days was made and the stock again mortgaged or pledged as security.

Here now was, under the rule announced in the cases *supra*, such a consideration as would support the claim of a *bona fide* purchaser for value; for they all

agree that if, when the property is put up as collateral security for an antecedent debt, there should be an extension of time of payment of the principal debt, then the transferee will be treated as a *bona fide* purchaser, and he will hold the same disincumbered of all secret equities between the original parties. The assignee, however, in order to secure this exemption or protection from prior and existing equities, must have taken the transfer *without notice* of the infirmity attached to the assignor's title, otherwise it continues in his hands *cum onere*. And here comes the weakness of plaintiff's case. There was substantial evidence introduced by the defendant which tended to prove that the bank had previously to this last pledge or mortgage, been informed of the defect in Curtis' title to the stock. If this was true, then the stock was held, as before, subject to the same defenses as it was when held by Curtis.

III. As to the claim of title by *estoppel*, so earnestly urged by plaintiff's learned counsel, it rests substantially upon the same foundation. We assent to the general doctrine announced by Colebrooke in his work on Collateral Securities, that "the holder for value of a certificate issued by the proper officers of a corporation, without notice of the fraud, or other defenses against the same, has a primary and direct claim, either to be admitted as a stockholder of the corporation or  *  *  * to such damages as shall be sufficient to recoup him for his loss. Section 314. *Or* we may put it even in the strong and pointed language of a Pennsylvania court and state it as well settled: "that one who, as purchaser or lender, gives value on the faith of a certificate of stock, authenticated by the seal of the corporation and the signatures of the proper officers, acquires an equitable title and may require the corporation to transfer the stock to him or respond in damages

for the default.   It is not a sufficient  answer to such a demand that the  certificate was  fraudulently issued, because corporations are not less than  natural persons answerable for the conduct of  their agents in the business intrusted  to their care."    *Willis v. Railroad,* 13 Phil. 33.   "No secret  equities or fraud or misappropriation  can be set up  by the corporation  to the prejudice and loss of  the  pledgee or  purchaser for value, without notice."   Colebrooke on Collateral Securities, sec. 316.   See, also,  Cook on Stock and Stockholders, sec. 418.

On the face of the Curtis certificate was the solemn declaration by the Woody corporation that said Curtis was the owner and holder of ten shares of  its stock and that the same had *been  paid  in full.*   If  then the Salina bank  had, on the  faith  thereof  and *without notice of any infirmity*, parted with something of value, or had changed its  position by giving additional time on Curtis' note or  surrendered other securities, etc., (any of which would have constituted the bank a *bona fide* purchaser  for value) then its title to the stock would be complete and free from any  claims by the corporation.  We should have there the proper application of  the rule that where a party has, by his  declaration or conduct, induced another to act in a  particular manner, he will not afterwards be  permitted to deny the truth of  his admission if the consequence would be to work an injury to such person.

This is the law appropriate  to a controversy of this kind; and if the facts in  this case were settled to conform to it in every  particular then there should be no doubt as to the rights of the plaintiff to recover. But some are wanting, or rather,  there is, under the evidence, some doubt as to the  existence of some of these facts going to establish such *estoppel.*   There is no  room for the application of  estoppel as to the

*original*-pledge in April, for at that time the bank gave-up nothing, nor did it change its position in any way. At the renewal of the Curtis note in August the bank, it is true, changed its attitude towards its debtor, gave him further time; but there is evidence, as already stated, that then the bank had *notice* of the fraud adopted by Curtis in securing the possession of the certificate. Before the bank will be heard to bar out the Woody corporation from making this defense (to-wit: that Curtis surreptitiously and fraudulently procured the stock certificate), it must come into court and show itself a *bona fide* purchaser for value without notice. And since, under the evidence adduced at the trial, this was disputable, the court committed error in peremptorily instructing the jury for the plaintiff.

IV. The court properly excluded the pretended by-laws offered in evidence by the defendant. They appear to have been adopted by the board of directors and not by the stockholders. There was no such power vested in the board of directors. *Carroll v. Mullanphy Savings Bank,* 8 Mo. App. 249; *State Savings Ass'n v. Printing Co.,* 25 Mo. App. 642; 1 Beach on. Priv. Corp., section 311.

The judgment is reversed and the cause remanded. All concur.