Harold E. JOHNSON, Respondent,

v.

E. A. DUENSING, George Duensing, Jr., S. C. Vaughn, J. R. Proctor, R. W. Meyer, Charles Israel, Appellants,

The Missouri River Sand and Gravel Company, a Corporation, Respondent,

B. D. Trout, R. A. Johnson, Jr., G. W. Winn, Appellants.

No. 23213.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

**760**

L. O. Schaumburg, W. H. Martin, Schaumburg & Martin, Boonville, Edward T. Matheny, Jr., Caldwell, Eastin, Blackwell & Oliver, Kansas City, for appellants.

William H. Becker, Columbia, for respondents.

PER CURIAM.

The appeal in this case was originally taken to the Supreme Court. An opinion written by Hon. Samuel A. Dew, sitting as Special Commissioner, was adopted by Division No. Two as the opinion of the Court. Later the court on its own motion transferred the case to the court En Banc where it was held that the amount in dispute did not exceed the sum of $7,500, resulting in transfer of the case to this court. Johnson v. Duensing et al., 332 S.W.2d 950. The opinion prepared by Judge Dew, for many years a member of this court, so clearly expresses our own views of the case that we adopt it as our opinion. With some slight additions, which appear in brackets, the opinion is as follows:

The plaintiff is a minority stockholder in the defendant corporation. On November 19, 1956, he brought this suit in equity on two counts. He characterizes the suit as a minority stockholder's derivative action. For the stated purpose of restoring to the corporation a loss sustained by an unlawful sale of its treasury stock, and to protect his proportionate interest in the corporate property, plaintiff, in Count 1, seeks to have declared illegal the sale of 545 shares of the corporation's treasury stock; to have the sale rescinded and the stock, since resold, returned to the corporation for resale at a price to be determined by the court; the election of directors to be declared void, and that certain orders be made as to costs and expenses of this action, and further orders for general relief. In Count 11, on the same grounds, he seeks a receivership and injunctive relief. It is averred that the conduct of the defendants complained of was the result of their action in concert as

a dominant and controlling group of officers, directors and stockholders.

The findings of the court on the issue of constructive fraud in both counts were in plaintiff's favor and the relief granted was, with few exceptions, substantially as prayed. The sale of the 545 shares of stock was rescinded, the election of two additional directors held void, the shares ordered returned to the corporation for resale; receivership and injunctive relief denied, and certain orders were made respecting reimbursement of the prices paid by the added defendants and concerning the costs and expenses of this action. All of the defendants, except the corporation, have appealed.

\* \* \* \* \* \*

When this action was filed, the defendants, except the corporation, were E. A. Duensing, George Duensing, Jr., J. R. Proctor, S. C. Vaughn, R. W. Meyer and Charles Israel, all stockholders and all (except Israel) acting members of the existing board of directors of the defendant corporation. In the present pleadings, they are referred to as the "original individual defendants". On April 6, 1957, plaintiff filed his first amended petition in which he added defendants B. D. Trout, R. A. Johnson, Jr., and G. W. Winn, referred to as the "added individual defendants."

The number of the parties involved and the nature of the joint and individual charges of constructive fraud made against them make it necessary to state the facts in considerable detail. The salient facts admitted by the pleadings, or by the pretrial conference, or established by the evidence, are:

The defendant corporation was organized in 1930. It has ever since been engaged in the dredging and sale of sand from the Missouri river near Boonville, Missouri. It has a capital of $40,000 represented by 2,000 shares of the par value of $20 each. For many years defendants E. A. Duensing, George Duensing, Jr., J. R. Proctor and S.

C. Vaughn had been stockholders, directors and managing officers of the corporation. Some of their prospective customers had bought shares of stock, but most of the shares had remained in the hands of the original owners or their heirs. However, the original individual defendants above named, did not personally own a majority of the stock at the times here involved. During the corporate life of the corporation, over $120,115 had been paid out in dividends. New competition had appeared in recent years in the area, new modes of freight transportation had developed and rates had increased, and flood and drought conditions had interfered, and in 1951, the disastrous flood of the Missouri river that year almost completely destroyed the company plant and property. No dividends had been paid since 1951. The flood damage to the company was over $62,700, required the rebuilding of the entire plant, the purchase of new barges and the making of many costly improvements for future protection. An RFC mortgage loan of $40,000 was made on practically all of the property, and a local loan of $7500 executed.

However, by November 30, 1955, the mortgage loan had been reduced to $26,416, despite two previous years of drought and unfavorable conditions for dredging sand. Conditions were favorable in 1955 and contracts for that season's production were secured. On the above date the company's audit showed a surplus substantially in excess of the previous years and a large increase in equipment, but showed the current liabilities exceeding the current assets by over $10,000. An auditor's report for 1955 showed a surplus of $45,736.80. The plaintiff estimated the surplus at $65,736.80. The book value of the property was shown to be $90,543. The defendants dispute these valuations. However, auditors of the company employed in 1955, reported that the corporation was badly in need of funds for operating purposes, and recommended that the company sell its treasury stock of 545 shares, which it had acquired from the original owners. No stock of the company

had ever been listed on the stock market and its market value had not been established.

The plaintiff, residing in Columbia, Missouri, was engaged in the ready-mixed concrete business and in several related lines of activity. He was currently under contract to furnish very select material for the Medical Center at the State University at Columbia. He was concerned in acquiring a reliable source of good sand supply for his contracts. He was a customer of the defendant corporation and other producers of sand. He examined the plant and property of the corporation and concluded his source of supply might be secured if he acquired an interest in the company. He undertook to obtain stock in the company sufficient to give him "a voice" in its operations and testified that while he did not seek a majority of the stock, he would have done so if necessary to obtain "an influence" in the company. He wrote to the stockholders, inquiring of any possible purchases of their stock. In 1955, he purchased 75 shares at $50 per share; 214 shares at $40 per share; 15 shares at $35 per share; 112 shares at $25 per share; 20 shares at $20 per share, a total of 436, or about 29 percent of the outstanding shares at an average of $38.78 each. In June of 1955, defendants E. A. Duensing and S. C. Vaughn, president and secretary of the company, respectively, wrote him a joint letter relative to history of the company and its conditions and urged a continuation of the tradition of disposing of stock among existing stockholders.

On December 15, 1955, the board of four directors of the corporation were the defendants, E. A. Duensing, George Duensing, Jr., J. R. Proctor and S. C. Vaughn. All had been active in the corporation management for many years. On that date they held a meeting of directors. Their stockholdings, respectively, were as follows: E. A. Duensing, 90 shares; J. R. Proctor, 240 shares; George Duensing, Jr., 295 shares; S. C. Vaughn, 10 shares. No one of them had a majority of the outstanding shares, nor did their combined holdings (635 shares) constitute such majority. At that meeting, on recommendation of the auditor, it was voted to sell the 545 shares of treasury stock which had been repurchased by the corporation, and were being held as a part of its assets. It was agreed to sell the same at par ($20 per share) as follows: 200 shares to defendant J. R. Proctor (a director), 245 shares to R. W. Meyer, and 100 shares to Charles Israel. Those sales were accordingly consummated. There was no notice given to the plaintiff or other stockholders of the sale of the 545 shares. Plaintiff estimated the book value of the stock at $65.18 per share and the market value at $50 per share. This action of the original individual defendants is characterized in the plaintiff's petition or in his briefs as "acting in concert," for the purpose of depriving plaintiff of his preemptive rights and of depriving the corporation of the value of the stock in excess of its par value, and to dominate and control the corporation, and the parties are referred to as "confederates." Meyer and Israel are described as "nominees" or persons "chosen" by the directors to purchase and to hold some of the shares of the treasury stock.

The evidence of the defendants tended to prove that it was necessary to obtain funds for working capital and to pay company debts; that the auditor recommended that the directors sell such stock; that they did so after consulting their banker. The banker, already familiar with the company, was offered an opportunity to purchase the stock and, although he said he thought it was worth from $25 to $30 per share on the basis of the physical assets, refused to buy any of it at any price because of the conflict in management. Defendant E. A. Duensing had bought 10 shares on December 8, 1955, at $20 per share. The defendants contend that the sale of the stock was in good faith and for a reasonable price, and, furthermore, that plaintiff had no pre-emptive rights respecting such stock.

Defendant Proctor, (a resident of California, Missouri, and who, at the time of the trial, was 90 years of age,) testified that

after the restoration of the plant following its destruction in the flood of 1951, so much money had been devoted to the reduction of the mortgage loan that funds for operational purposes were greatly needed; that government taxes had become delinquent, about which a government agent had been making inquiries; that he (the witness) made a suggestion to the stockholders to stop the penalties and interest, informing them that he would be willing to loan the company enough to pay the government debt; that he did so, on the company's note, and when the directors decided on November 15, 1955, to sell the treasury stock to pay debts, he agreed to take enough shares to offset the amount of his personal loan, and finally agreed to take 200 shares. Another reason he assigned for making the loan was that defendant E. A. Duensing had been advancing his own money for traveling and other expenses in attending to the business of the company. When shown from the audit that the company's note to him in 1955 was only $1,500, and that 200 shares at $20 per share ($4,000) would more than offset the $1,500 note, defendant Proctor said that he thought the note was for a larger amount, but repeated that he took the 200 shares reluctantly to liquidate his loan to the corporation.

Defendant R. W. Meyer, who bought 245 shares of the treasury stock, had been in the insurance business for 32 years in Boonville, Missouri. He had been secretary of a building and loan association of that city, formerly president of the Chamber of Commerce there, and a former city clerk. The defendant corporation, as of December 15, 1955, owed him $8,012.80 for insurance premiums on policies bought from him. He said he had made many futile attempts to collect this account and that on such occasions the company officers had always described to him the extent of the company's great loss in the 1951 flood, its large outlay of funds for restoration purposes and the efforts still under way to get back into business. He sug-

gested of his own accord to defendant Vaughn that he would be willing to take some of the treasury stock to apply on his insurance premium account against the company. He purchased 245 shares, paid for them in cash, which was paid back to him and applied on the account. The balance of his premium account was paid in 1957.

Defendant Charles Israel lived in Kansas City, Missouri, where he was engaged in the transfer business. For 30 or 40 years he had been an intimate friend of George Duensing, Jr., who was an officer and director of the defendant company. He testified that in the early years when the company was paying dividends he had several times inquired of Duensing if there was any of the company stock for sale. In December, 1955, he met the Duensing brothers in Kansas City and they told him that the company had restored its plant and would start paying dividends again and recommended the stock. He did not investigate the value of the stock, but paid the asking price, the par value of $20 per share, and purchased 100 shares authorized on December 15, 1955.

The annual meeting of the stockholders scheduled for December 10, 1955, was held on January 18, 1956. The following were present representing shares of stock, respectively, as follows: E. A. Duensing, 90; J. R. Proctor, 240; George Duensing, Jr., 295; Harold E. Johnson, the plaintiff, 304, and by proxies, 132; S. C. Vaughn, 10; and other proxies, 848, a total of 1919. Announcement was made that election of a board of four directors for the year 1956 would ensue and by cumulative vote, the following were elected: the plaintiff, defendants, J. R. Proctor, E. A. Duensing, and George Duensing, Jr. S. C. Vaughn, the secretary, a resident of Boonville, Missouri, was not re-elected as a director. Thereupon, over the protest of the plaintiff, a motion was made and carried (plaintiff not voting) to amend the by-laws by increasing the number of the board of directors from four to six. A separate election

was then held for the additional two directors, and the election, on the cumulative method, resulted in electing defendants Vaughn and Meyer as additional directors. Defendant Meyer was called by telephone, informed of his election as a director, and was requested to come to the directors' meeting. He testified that his election as a director was not a condition of the purchase of his stock; that he had been asked since his purchase if he would be willing to serve as a director and replied he would "do what I could." At the meeting of the directors, immediately following, plaintiff did not renew his protest.

On January 23, 1956, plaintiff, on advice of counsel, wrote to all the officers and directors, protesting the sale of the 545 shares of treasury stock for less than its value and without notice to him or the other stockholders, or opportunity given them or him to bid on or purchase said stock; challenging the election of the additional directors as illegal; claiming that his pre-emptive rights to purchase the stock had been violated; that the assets of the corporation had been diminished and his proportionate interest therein likewise reduced. He also wrote to the original individual defendants, demanding that they take action to recover from defendant Proctor the value of the stock sold to him or to rescind the sale; that proper action be taken to recover from the defendants Meyer and Israel the difference between the price paid and the real market value of the shares purchased by them, threatening to take such action on his own part if such defendants failed to do so, and demanding a resolution by the directors nullifying the election of the defendants Meyer and Vaughn as additional directors.

Plaintiff wrote to the defendant George Duensing, Jr., on October 6, 1956, as follows: "Dear George: I want to make one last effort to settle the Missouri River Sand and Gravel business. Would you and your associates consider selling your stock at $20 per share? If you would, please call me or write me and I'll meet you to see if we can close this on a satisfactory basis. Sincerely, Harold E. Johnson."

Explaining the above letter, the plaintiff testified that: "If they would take $20 in good faith, I would put the stock back like I asked them to."

After a lapse of nearly a year, the original individual defendants (except Vaughn) and six other stockholders, on November 12, 1956, jointly entered into an agreement with defendant B. D. Trout to sell and to deliver to him within 14 days prior to November 23, 1956, 1310 shares of stock of the defendant corporation, for the price of $25 per share. The agreement provided that if receivership proceedings were instituted against the corporation before delivery, the contract might, at the option of the buyer, be rescinded; that the buyer would indemnify the sellers against any action of the plaintiff arising out of the treasury stock sold to the defendants. Plaintiff contends that this contract was void as to the parties hereto, as violative of public policy and involving champerty and maintenance, and as a part of a scheme to sell the control of the corporation. A few days later, on November 19, 1956, plaintiff filed the present action against the original individual defendants and against the corporation, which refused to join as plaintiff. Pursuant to the above contract, the 545 shares of treasury stock theretofore purchased by defendants Proctor, Meyer and Israel were conveyed, as directed by the defendant Trout, as follows: 217 shares to himself and 164 shares to each of his brothers-in-law, defendants R. A. Johnson and G. W. Winn. All had knowledge of the pendency of this action. On November 15, 1956, all of the original individual defendants who were officers and directors of the corporation, resigned.

An annual meeting of the stockholders was held on January 16, 1957, including the added individual defendants or their proxies. Over the negative vote of the plaintiff, a resolution was there adopted ap-

proving all things done by the directors regarding the sale of the 545 shares of treasury stock on December 15, 1955, and all things done pertaining to the management of the corporation, and deploring the institution of the present action and its damaging effect on the corporation. The directors were instructed therein to take appropriate action to protect the corporation against such damages. The plaintiff had offered resolutions and notices without avail, demanding that the sale of the treasury stock be rescinded, returned to the corporation, and that the election of the two additional directors be nullified. At that meeting a resolution was offered and passed, reducing the number of directors back to four. Thereupon, B. D. Trout, R. A. Johnson, Jr., G. W. Winn and the plaintiff were elected directors for 1957. Since that date the plaintiff has joined with the other directors in refinancing the corporation, and the business of the corporation has been run in a businesslike manner. Plaintiff testified that he no longer desired a receivership or any injunctive relief. On April 19, 1957, plaintiff amended his petition by including the "added individual defendants" and the charges affecting them, as stated.

The trial court in its decree found that the 545 shares of treasury stock when sold to defendants Proctor, Meyer and Israel, were worth substantially in excess of $20 per share; that they were sold without notice to the plaintiff or without affording him an opportunity to bid on or to purchase same; that the above purchasers had since resold the shares at a profit; that the sale to one of the directors (Proctor) "and to purchasers chosen by the directors" was a constructive fraud on the corporation and the other stockholders; that defendants Trout, R. A. Johnson, Jr., and Winn purchased the 545 treasury shares with knowledge of plaintiff's claims and equities, and are not bona fide owners of such shares; that the shares should be cancelled and offered for sale at the place and in the manner as directed by the decree; that the

election of the two additional directors on January 18, 1956, was illegal and a violation of the plaintiff's right to a cumulative vote of his shares; that plaintiff had sought a correction of such illegal acts of the defendants, and that further appeal to the corporation to take action regarding the same would be futile; that, in fact, the stockholders had ratified such illegal actions of the directors.

The court in its decree further ordered as to both counts, that the 545 shares of treasury stock sold to defendants Proctor, Meyer and Israel be cancelled; that the present holders thereof return the same to the corporation to be sold to the highest bidder upon public notice and two weeks' notice to all the stockholders; that plaintiff be reimbursed by the corporation in the sum of $2,758 for his expenses incurred in opposing the sale of the stock and illegal election, both of which the court decreed were void; that the defendants be required to pay their own expenses in defending this action, and to repay any part thereof as may have been paid by the corporation; that out of the proceeds of such resale, the corporation pay to defendants Trout, R. A. Johnson and Winn $20 per share of the stock so returned, and that the corporation's officers and directors sell the same in one lot at its office at public auction, and that all proceeds received above $20 per share be paid into the treasury of the corporation, said sale to be within 30 days of the date of the decree unless extended by the court. The court denied the receivership and the injunctive relief asked for in the petition.

In its memorandum accompanying its decree and made a part of the record, the court, in addition to the findings noted, acknowledged that Section 351.185, subd. 1 RSMo 1949, V.A.M.S., specifically vests in the directors of a corporation the power to dispose of treasury stock at such price as they may fix. The court declared that directors of a corporation occupy a trust capacity and may not deal with themselves, and added: "Here the defendants, direc-

tors of a small corporation, were without doubt men of honesty and integrity and knowingly did nothing illegal or in violation of the law. Yet under the authorities their action under the circumstances amounted to a constructive fraud."

The court further found that the evidence did not definitely establish the fair and reasonable value of the treasury stock; that plaintiff's right of cumulative voting had been violated in the election of directors complained of, and that the majority of the stockholders cannot control or set aside the law governing the election of directors.

The first point of error raised on this appeal is that the court erred in finding that the sale of all of the 545 shares of treasury stock was fraudulent or improper. They first contend that the plaintiff had no pre-emptive right to the purchase of treasury stock. While the court discussed the pre-emptive right of stockholders it did not determine whether such right applied to the plaintiff's purchase here in question. The decree indicates rather that it was based upon the sale of some of the shares to one of its directors and "to those chosen by the directors," and that the price paid was inadequate, thus constituting constructive fraud involving all of the 545 shares.

■ The purpose of the rule of a stockholder's pre-emptive right is recognized by statute and by the courts of this state to be that such stockholder will be given the opportunity to maintain his fractional or proportionate interest in the assets of a corporation by exercising his privilege in preference to non-stockholders, to purchase his same fractional share of any new stock that may be created by the corporation. Section 351.305 RSMo 1949, V.A.M.S.; Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 56 A.L.R. 1276. We have been cited to no authority in this state, and have found none in our own research, authorizing a stockholder's pre-emptive right to extend to shares of capital stock, once fully paid for, issued and subsequently reacquired by the corpora-

tion and held as a part of its general assets. It is our conclusion that the plaintiff in the instant case had no pre-emptive right to the purchase of any part of the 545 shares of treasury stock in question. As the court noted, Section 351.185, subd. 1 provides in part: "Shares of a corporation issued and thereafter acquired by it may be disposed of by the corporation for such consideration as may be fixed from time to time by the directors." Furthermore, the general management of the business and property of a corporation in this state is vested in its board of directors. Section 351.310. See also, 11 Fletcher Cyclopedia, Corporations, Section 5136.2.

The issue of legality, therefore, of the sale of the 545 shares of treasury stock to defendants Proctor, Meyer and Israel by the directors was unaffected by the fact that plaintiff was given no notice thereof or opportunity to exercise any pre-emptive right to purchase such stock. Merrill v. Davis, 359 Mo. 1191, 225 S.W.2d 763.

■ Meyer and Israel were not stockholders or directors at the time the directors authorized a sale of the 545 shares of treasury stock. They did not participate in the fixing of the asking price therefor. There was no evidence and the court did not find that they were guilty of self-dealing in the transaction. As the defendants suggest, the issue of the validity of the sale to Meyer and Israel should be considered apart from that in the sale to Proctor, who was a director of the corporation at the time of his purchase and participated in fixing the sale price thereof. Invalidity of Proctor's purchase could not be imputed to them under the evidence. 18 C.J.S. Corporations § 477, p. 1148.

■ The uncontroverted evidence is that defendant Meyer was a creditor of the corporation in a substantial sum which was long past due, upon which account he agreed to take and to apply treasury stock at par and to pay cash for the additional shares. Such consideration for stock is specifically

authorized by Section 351.160, subd. 1. (Mr. Meyer testified: *"They didn't propose to me to buy any stock. Through some other source* I learned there was some Treasury stock and I offered to take some treasury stock in payment for all or part of my account."*) We find no proof of any wrongful action "in concert" with the directors that would render defendant Meyer's purchase of 245 shares of treasury stock illegal and subject to rescission and cancellation. Had the price been so absurdly low as to be in itself a badge of fraud, the sale might be subject to the claim of fraud on the basis of inadequacy. The court said the value of the stock was substantially in excess of $20 per share, but also stated that the evidence did not definitely establish what its reasonable value was. Under the evidence there was not sufficient proof of such greater value of the stock as to justify the court in finding, as a matter of law, that it was reasonably worth more than $20 per share or par, or that Meyer's purchase of it at that price constituted constructive fraud upon the plaintiff or upon the corporation. To be sure he was a purchaser "chosen" by the defendant directors but it would be difficult to conceive how a person could legally purchase stock from a corporation without being "chosen" as a buyer.

Likewise, defendant Israel had nothing to do with the fixing of the price of the 100 shares sold to him. There was no proof of constructive fraud on his part in such purchase that would justify its rescission.

The corporation was comparatively small. Its stock for the most part had remained in the hands of its original stockholders or their heirs since its incorporation in 1930. Its stock had never been listed on the stock market and its value was largely a matter of fixed assets, management and good will. It was emerging from a disastrous flood damage in 1951, and a costly restoration program. The plaintiff, in his admitted desire and purpose to obtain an interest and "a voice" in the corporation, was willing to pay and had paid on various occasions in 1955,

prices for its stock from $20 per share to $50 per share. (He was asked on cross-examination: "Weren't you interested in buying a *majority* of the stock? A. *If that is what it took, yes sir."* A significant fact is that on *November 23, 1955,* he paid Cecelia Kukenhuler $20 a share for her 20 shares. And yet he asserts that the sale on *December 15, 1955,* to Meyer and Israel for the same price was a constructive fraud.) He had suggested $20 per share in his letter to defendant George Duensing, Jr. The banker, with whom both the plaintiff and the defendants had consulted, said that while the stock on the basis of physical assets should be worth from $25 to $30 per share, he would not buy it at any price because of the conflict in management. Defendant E. A. Duensing had recently bought 10 shares at $20 per share from another stockholder.

(He (Duensing) testified that the fair value was $20 per share. Mr. Duensing had been president of various business enterprises. He served as a member of the Legislature for four consecutive sessions from his home county, Lafayette, and was also a member of our last Constitutional Convention. Defendant Proctor was asked: "At that time, as a member of the Board of Directors what value did you think and decide was a reasonable value for the sale of that stock. A. *That is a mighty difficult question.* Q. Did you think the stock was worth that? A. No, I didn't and I don't think it was and *I don't think anyone knew the real value of the stock. I didn't know."*) We deem the proof insufficient to authorize a court of equity to declare, as a matter of law, that the par value of the stock, $20 per share, was so inadequate a price as to constitute a badge of fraud on the part of the purchaser. (Respondent recites a great many cases relating to manipulation of corporate control. Those cases are not in point as no such issue is involved in the instant case.)

Neither do we consider that fraud or constructive fraud was established on the part of defendants Meyer and Israel in the

fact that at the stockholders' meetings they voted their stock with the majority, as they had a legal right to do, or that they gave their proxies to other stockholders to vote at the meetings which they did not attend, or the fact that Meyer accepted the position of director when requested and elected, or that they joined with nine other stockholders in the contract of sale to defendant Trout. The contract of sale to Trout was not void as involving champerty or maintenance, as charged. All of the parties to that contract were directly interested in the title to the shares of stock to be sold thereunder. Moffett v. Commerce Trust Co., Mo., 283 S.W.2d 591, 596. The legal rights and limitations of corporate stock ownership are fixed by law and cannot be determined or altered by either the majority or minority stockholders.

Defendants admit that the purchase of 200 shares of the treasury stock by defendant Proctor presents a situation where the charge of fraud or constructive fraud is more plausible. They assert that self-dealing between a director and his corporation is not wrongful per se, but it does invite closer scrutiny than otherwise. Plaintiff, as did the court, takes the position that despite the authority given the directors by Section 351.185, to determine the consideration for which treasury stock of a corporation may be sold, no such director may legally derive any personal profit out of the exercise of such prerogative.

It is true that defendant Proctor testified that he had made a loan to the corporation for which he held a note in the amount of $1,500, past due and owing at the time in question, and that he agreed to buy enough of the shares to liquidate the debt. He first agreed to take 100 shares and then a second 100 shares. He said he did so to help the corporation to obtain more funds for operating purposes, but it is evident that he purchased over twice as many shares as necessary to offset the note he held.

In some jurisdictions purchase of property belonging to a corporation by one of its directors or officers may or may not be upheld, depending upon the circumstances in the given case. To support the recognition of such a policy in this state defendants cite Foster v. Belcher's Sugar Refining Co., 118 Mo. 238, 24 S.W. 63. In that case the court merely upheld the right of a director to make a loan to his corporation in good faith and to hold it as a valid claim against the corporation. The theory of the restriction on a director is, of course, that he cannot utilize his inside information and his strategic position of trust for his own preferment. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, 291. The prevailing rule in this state, however, remains as quoted with approval by this court in Bromschwig v. Carthage Marble & White Lime Co., 334 Mo. 319, 66 S.W.2d 889, 892, 893, as follows:

"A director or other officer may not either directly or indirectly derive any personal profit, benefit, or advantage by reason of his position that is not enjoyed in common by all the stockholders. He will not be permitted to retain any secret profits made by him in breach, or in disregard, of his fiduciary relation but will be required to account for such profits to the corporation. * * * It is immaterial that the corporation was not damaged by the transaction in which the profits were made, or that he acted throughout in the highest good faith and without intent to injure the corporation."

See also, Ford v. Ford Roofing Products Co., Mo.App., 285 S.W. 538; Keokuk Northern Line Packet Co. v. Davidson, 95 Mo. 467, 8 S.W. 545; Frankfort Exchange Bank v. McCune, Mo.App., 72 S.W.2d 155.

It is said by some authorities that such strict restrictions on the activities of a director no longer accord with the more modern view. 13 Am.Jur., Section 1001, Supp. 1958–59. "Fraud is not presumed. Domination or control of a corporation is

not equivalent to fraud. A transaction is not actionable merely because the directors may derive an advantage from it." 13 Fletcher Cyclopedia, Corporations, Section 5829.

However, notwithstanding the views expressed by the courts in some jurisdictions on the subject, the policy of the law in this state has long continued to be as expressed in the Bromschwig case, supra, as quoted above. The result is, therefore, that regardless of the sufficiency or insufficiency of the price paid by the defendant Proctor for the 200 shares of treasury stock sold to him, which price he, as a director, helped to fix, and which stock he later concededly resold at a profit, such sale to him was violative of the public policy of this state and, when attacked, is voidable on the ground of constructive fraud.

■ Defendants maintain further that rescission was not a proper remedy in this case. They assert that the proper remedy was an accounting for damages by the directors, not rescission. They point out, moreover, that defendants Meyer and Israel were not parties to any fraud or had any knowledge of any fraud on the part of any of the directors, and that purchasers of the stock from them were likewise bona fide owners of such stock. The remedy of rescission, if otherwise applicable to the sales of the stock to defendants Proctor, Meyer and Israel, was a proper remedy, although it may not have been the sole remedy. 78 C.J.S. Sales § 388, p. 10; Dowd v. Lake Sites, Inc., 365 Mo. 83, 276 S.W.2d 108.

Defendants assert that even if rescission be the plaintiff's proper remedy, the court exceeded its authority in its decree wherein it required the stock to be resold, prescribing the time, conditions, terms and manner of such resale and providing for the disposition of the proceeds thereof, all of which, defendants claim, are matters reposed by law in the board of directors and not in a court of equity. Defendants say that it is for the directors to determine

if a resale of the stock is advisable at this time and under the present circumstances. On the contrary, plaintiff contends that the decree rightfully fits itself to the circumstances; that it corrects the wrongdoings of the defendants; prevents their repetition, protects the minority stockholders, and provides funds for the reimbursement of the consideration paid. Plaintiff says that the stock is certain to bring a higher price when resold.

■ The relief of rescission of the sale of the 200 shares to defendant Proctor should be accompanied by reasonable provisions for placing the parties in status quo. 77 C.J.S. Sales § 115, p. 829. Such, of course, cannot be done by a decree of court without in some degree interfering with the usual prerogatives of the board of directors. The equities of the parties should be protected even if fraud is involved. 18 C.J.S. Corporations § 411, p. 998.

■ Defendants' last point is that the court erred in not allowing the defendant directors to be reimbursed by the corporation for costs and charges incurred in resisting plaintiff's claim and this action. They make their contention under Section 351.355, which provides that directors and officers of a corporation shall be indemnified by it against expenses and liabilities reasonably incurred in litigation against the corporation provided that such directors shall not be finally adjudged liable for negligence or misconduct in the performance of their duties as such officers or directors. Under the evidence the trial court was correct in the present case in disallowing the request of the individual defendants that their costs and expenses incurred in this action be reimbursed by the corporation. They all joined in resisting all of the plaintiff's claim, a substantial part of which must be sustained, as we have found, and under the circumstances their costs and expenses should not be charged to the corporation.

Plaintiff calls attention to the fact that the defendants have not included in their points of error the ruling of the trial court

that the election of the two additional directors in 1956 was illegal. Defendants admit that they made no point of that issue on this appeal, since it is conceded that the directors have long since abolished the offices of the two additional directors. Defendants also admit that they did not contest the plaintiff's right to expenses and attorney's fees in so far as they arise from contesting the illegal election. Plaintiff, however, urges that the matter of the election is not moot and insists upon a ruling thereon for his protection. Since the ruling of the trial court on that issue has not been made a point of error in this appeal, we see no useful purpose in discussing it further. For further authority supporting the ruling see, Klix v. Polish Roman Catholic St. Stanislaus Parish, 137 Mo.App. 347, 118 S.W. 1171; Watson v. Sidney F. Woody Printing Co., 56 Mo.App. 145, 155.

Under Sections 510.310, subd. 4 and 512.160, subd. 3, we must review this case upon both the law and the evidence, and give such judgment as the trial court ought to have given, as to this court shall seem agreeable to law. Jackson v. Tibbling Mo., 310 S.W.2d 909. Having chosen the remedy of rescission, plaintiff may recover only such relief as is appropriate to such proceeding. For the reasons stated and under the above authorities, it is our judgment that the decree of the trial court should be reversed and the cause remanded with directions to enter a decree setting aside as invalid the sale by the defendants E. A. Duensing, George Duensing, Jr., J. R. Proctor and S. C. Vaughn as directors of the defendant corporation on December 15, 1955, of 200 shares of the treasury stock of the corporation to defendant J. R. Proctor, one of its directors; confirming the sale of the 245 shares and 100 shares of such stock on that day to defendants R. W. Meyer and Charles Israel, respectively, and their resale of said 345 shares to defendants Trout, R. A. Johnson, Jr., and Winn; declaring the election of defendants Vaughn

and Meyer as directors on January 18, 1956, to be void; adjudging that of the 200 shares of said stock so sold to defendant J. R. Proctor, director, four-tenths (80 shares) were thereafter purchased from him by defendant Trout, three-tenths (60 shares) by defendant R. A. Johnson, Jr., and three-tenths (60 shares) by defendant Winn; that all of such repurchases from defendant Proctor were at $25 per share and were made with full knowledge of the claims of the plaintiff as to the circumstances of defendant Proctor's purchase of same from the corporation; that the sale of said 200 shares of treasury stock by defendant Proctor to defendant Trout, R. A. Johnson, Jr., and Winn being Certificates No. 108, No. 109, No. 110, be declared rescinded, and such 200 shares to be returned, properly endorsed, to the corporation; that the said corporation offer said 200 shares of treasury stock for resale to the highest bidder for cash in one or more lots at the office of the corporation on a date and at an hour to be fixed by the directors not later than 30 days from the date of this decree unless, for good cause shown on the application to the trial court, with due notice thereof to the stockholders and to the public, such time may be extended by it, not to exceed 90 days from the date of this decree, such sale to be advertised to the public at least ten days prior to the date of the sale in a newspaper in Boonville and one in Columbia, and by written notice by letter to all the stockholders at least 10 days prior to the said time of sale, and out of the proceeds of such resale of such 200 shares, not to exceed $20 for each share so sold shall be paid to the defendants B. D. Trout, R. A. Johnson, Jr., and G. W. Winn in their respective proportions of four-tenths, three-tenths and three-tenths, and all the proceeds in excess of $20 per share so sold shall be and remain the property of the corporation; that the defendants pay their own expenses in defending this action; that the present directors, consisting of the plaintiff, defendants J. R. Proctor, B. D.

Trout and G. W. Winn are the legally elected board of directors of the corporation; that plaintiff's prayer for a receivership and for injunctive relief be denied, and that the plaintiff have and recover of the defendant corporation the sum of $2,758 as and for his expenses and attorneys' fees incurred in this action. The trial court is directed to make such further orders as necessary to carry out the provisions of said decree.

The decree is reversed and the cause remanded with directions to the trial court to enter a decree consistent with the directions therefor set forth in this opinion.