SOUTHWEST PUMP & MACHINERY COMPANY, RESPONDENT, v. O. A. FORSLUND, APPELLANT.—29 S. W. (2d) 165.

Kansas City Court of Appeals. May 26, 1930.

*Burns & White* for appellant.

*Charles M. Blackmar* and *Robt. E. Colebird* for respondent.

BOYER, C.—Suit for injunction. The parties will be referred to as plaintiff and defendant. The petition alleges the corporate capacity of plaintiff; that it has a paid-up capital of $25,000; that defendant is a stockholder and director, and prior to April 1, 1929, was the president and principal officer of said company; that the principal business of plaintiff was the selling of pumps, temperature regulators and other similar articles of machinery; that during a long period and by the expenditure of time and money, it built up a favorable business name in Kansas, Oklahoma, and the western half of Missouri; that by advertising, personal solicitation and otherwise, at great expense, it acquired many customers and established profitable trade relations in said territory; that the good will of the business is a valuable asset and the company has operated at a profit; that the value of the good will and business of the company cannot be definitely stated; that plaintiff has acted as agent and distributor for many companies in disposing of their products in this territory, and had valuable contracts and licenses with said companies for the sale and disposition of their products; that prior to April 1, 1929, defendant, while still president and a director of said company, and in violation of his duty as such officer and director, entered into a scheme to deprive plaintiff of its contracts with the companies represented by it and to acquire and secure them for himself, as well as the business of plaintiff; that he communicated with said companies in order to induce them to cancel their contracts and licenses with the plaintiff and to cease business with plaintiff; that defendant falsely represented to each of said companies that plaintiff was about to cease business in Kansas City, and that each and all of the companies doing business with plaintiff were about to cancel their contracts and sever trade relations with plaintiff; and represented that he was resigning as president and director, and without the benefit of his services the plaintiff would cease to function; that defendant took from the files of

264

the company lists of plaintiff's customers, specifications, and other valuable papers showing plaintiff's method of conducting business and future prospects for business, and that defendant is now using said information to the detriment of plaintiff's business and to obtain for himself business which was created and developed while he was an officer and director of the company, and that he has solicited business from plaintiff's customers; that defendant has expressed his intention to use such information which he obtained as an officer and director of plaintiff company to obtain the business which rightfully belongs to the plaintiff and thus destroy the good will of plaintiff and its value as a going concern. It is further alleged that plaintiff is a going concern and has been transacting business at a profit and that the damages which will be suffered are incapable of accurate ascertainment; and that unless defendant is restrained, plaintiff will suffer irreparable injury. The prayer was for an injunction restraining the defendant from in any way interfering directly or indirectly with the trade relations and contracts which the plaintiff has with the companies for which it has acted as distributor, and to restrain defendant from in any way using any of the information which he obtained while president and director of plaintiff for the purpose of obtaining business from plaintiff's customers, and to restrain defendant from selling or offering to sell any pumps or heat regulators to plaintiff's customers in the states of Kansas and Oklahoma and the western half of the State of Missouri, and to restrain defendant from in any way interfering with the plaintiff's business, its good will, its trade name, its customers, its agents or its employees; and further prayed for general relief.

The answer was a general denial.

The trial began on the 22d day of April 1929, upon the conclusion of which, and after holding the case under advisement, the court on the 28th day of April 1929, found the issues in favor of plaintiff and against defendant and decreed that for a period of three years from the entrance of the decree that defendant, his agents, servants, and employees be enjoined and restrained from interfering with the trade relations, contracts and accounts which the plaintiff has with certain named companies for which the plaintiff is the distributor; and restrained from making use of or disclosing any knowledge or information gained or obtained from plaintiff by said defendant while president and director of the company. And the third paragraph of the decree, about which defendant specially complains, is in these words:

"That the defendant, his agents, servants and employees be and are hereby enjoined and restrained from soliciting orders, either directly or indirectly, for pumps, pumping equipment and accessories, heat regulators and other similar machinery from the plaintiff's customers which it had prior to this date."

Defendant has duly appealed and assigns as errors that (1) the judgment is contrary to law in that it restrains defendant from soliciting customers of the plaintiff acquired subsequent to February 18, 1928, (2) that it interferes with the rights of other persons or firms not parties to this suit to contract with the defendant, (3) that the decree is broader than the pleadings, and (4) that the injunction was granted for an unreasonably long period of time.

The evidence tends to show that in 1924, a partnership known as the Southwest Pump & Machinery Company was formed by the defendant in association with one Widener and one Landeck, and engaged in selling mechanical equipment at Kansas City. Defendant was experienced in the business. He contributed no capital to the partnership, but this was furnished entirely by Widener and Landeck. The partnership had the accounts of and represented Yeomans Brothers, Fulton Sylphon Company, Goulds Pumps, Westco-Chippewa Pump Company, the Skidmore Corporation, and others, all of which companies were engaged in the manufacture and sale of pumps and like products thru their distributors such as the plaintiff. The business of the partnership prospered and in February, 1928, the partners incorporated their business under the name they had been using, and by bill of sale conveyed to the corporation all property of the partnership which included the ''assets, good will, contracts, franchises, chattels, goods, wares, merchandise, furniture, fixtures and bills and accounts receivable belonging or pertaining to said business of sellers.''

An equal amount of common stock of the corporation was issued to the defendant and his associates. Defendant was elected president and was also elected a director of the company. The corporation then continued the business formerly conducted by the partnership. The defendant was the active manager of the selling portion of the business, Landeck arranged the finances, credit and banking, and Widener assisted in selling.

At the time of the trial the total assets of the company amounted to approximately $35,000. The business had been promoted and built up by calling on architects, engineers, and prospects and by advertising and in various other ways.

Prior to January, 1929, Widener and Landeck devoted most of their time to another company engaged in a different business in which the plaintiff corporation owned stock. That business was disposed of and about the first of the year 1929, Widener and Landeck came more actively into the business of the corporation and were voted equal salaries with that of defendant. The defendant joined them in passing such a resolution. Shortly thereafter, however, defendant became dissatisfied and early in the year, expressed the view that there was not enough business and enough profits for all three. The corporation earned a net profit of about $7000 in 1928. It was esti-

mated that defendant would earn in 1929, about $8500. He claimed this was not enough and wanted $15,000. Propositions were made back and forth between these men to buy or sell their stock in the company. Finally Widener and Landeck made a proposition to defendant to sell their stock to him on a basis of the actual value of the physical assets of the company, plus $5000 for their interest in the good will of the company. Defendant held this proposition under advisement for some period for the alleged purpose of ascertaining whether he could raise the funds to finance the purchase. Early in March, and about the 10th of that month, he went to Chicago to confer with one of the Yeomans Brothers and also with a representative of one of the other companies whose agency was held by the plaintiff. As a result of this conference, he decided not to buy the interest of his associates in the corporation, but to go into business on his own account and form a new company. He says that he definitely reached this conclusion about the 15th or 16th of March while he was still president and a director of the plaintiff company; that his intention was to obtain the agencies of all the companies that he could which were represented by the plaintiff and to obtain all the business that he could from any or all of the customers of the plaintiff, and that he knew that this would hurt the plaintiff, and gave as his excuse, "they tried to hurt me."

Shortly after defendant's visit to Chicago, plaintiff company was notified by a number of the companies which it represented that they were cancelling their agency agreements with plaintiff; and thereafter defendant obtained for himself the agency, for the Kansas City territory, for all of the principal companies represented by the plaintiff company.

The evidence showed that defendant decided definitely to go into business for himself about the 16th or 17th of March as a competitor of the plaintiff and to sell to the customers of plaintiff the lines of merchandise handled by the companies then represented by the plaintiff; and defendant knew that by taking over the agencies of the companies and the selling of the lines of products of these companies that plaintiff would be deprived of its most valuable lines of business and that there would be little left for plaintiff.

About the time that defendant determined to go for himself, he tendered his resignation as president to the plaintiff to be effective April 1. Shortly prior to April 1, plaintiff learned for the first time that the companies represented by it proposed to cancel their agencies with plaintiff and that defendant was entering into contracts with said companies to represent them in the Kansas City territory. Pursuant to his plans, defendant opened his competitive business April 1, 1929, and at the time of the trial in this case had contracts and agreements with and was representing the principal companies previously represented by plaintiff and during the time that defendant

was president and a director of said company. It was further shown in evidence that defendant owned no property from which a money judgment against him could be satisfied; that defendant remained a director of the company and resigned as such, upon advice of his counsel, during the progress of the trial. The evidence further showed that there was no way to definitely determine or to estimate the damage which might accrue to plaintiff on account of the conduct of defendant.

## OPINION.

Respondent here has filed its motion and suggestion that the case should be transferred to the Supreme Court for the reason that it appears the damage or the "amount in dispute" would exceed $7500. This suggestion is made on the theory that the petition alleges that the wrongful acts of the defendant will destroy the good will of plaintiff and its value as a going concern; and that the evidence shows the assets of the company to be about $35,000; that the estimated profit of defendant for the year 1929 was $8500; that his income for the previous year was $7500 or $8000, and that the trend of other evidence is that plaintiff would be damaged in excess of $7500.

It does not affirmatively appear from the record in this case that "the amount in dispute" exceeds $7500, and unless such fact does so appear jurisdiction of the appeal is in this court. The requisite facts to confer jurisdiction upon the supreme court do not appear either from the pleadings or from the evidence. On the other hand, the only allegation in the petition and the only evidence in the record upon the subject show that there is no way to estimate the amount of damage which may be sustained by the plaintiff, or the loss which may be occasioned to defendant on account of the injunction. Under authority of Joe Dan Market, Inc., v. Wentz et al., 13 S. W. (2d) 641, 644, we retain jurisdiction and will dispose of the appeal on the merits.

The paragraph of the decree to which appellant objects has been set out in the statement. It restrains defendant from soliciting orders from the plaintiff's customers which it had prior to the date of the decree, April 28, 1929. Appellant contends that this is erroneous because it unlawfully restrains defendant from soliciting customers of the plaintiff acquired subsequent to February 18, 1928, which was the date of the sale and transfer of the good will of the partnership to the corporation. It is claimed "that the only thing that it is necessary to consider is the effect of the sale of the good will upon defendant's right to enter into a rival business and freely compete with the plaintiff;" that in the absence of an agreement not to re-enter business that defendant would have the right to do so and to compete with plaintiff for its customers acquired subsequent to a transfer of the good will of the partnership.

We do not concur in the proposition of appellant nor agree with the premise that the only thing necessary to consider is the effect of the sale of the good will of the partnership. Appellant cites and relies upon cases dealing mainly with the sale and transfer of a mercantile business from one individual to another, and overlooks, or passes by unnoticed, the relationship existing between the parties in this case. Defendant and his associates, as a partnership, voluntarily sold and assigned all of their assets, including good will, to the plaintiff, and thereafter continued to conduct the business in the name of the plaintiff and to develop it. During all this time and even into the trial of the case, defendant was a director of plaintiff company and shortly previous thereto, when he was president, general manager and a director, he determined to obtain for himself, and against the interest of the company, a valuable part of its property. When he could not obtain an arrangement to his own liking within the company he set out to obtain for himself the agency of the principal companies represented by the plaintiff, and began efforts to obtain the trade and customers of the plaintiff and declared his intention to continue in such a course with the knowledge on his part that his action would operate to the great financial injury of the corporation. As a director and as president of the corporation he occupied a fiduciary relation to the company and to its stockholders. His position was one of trust. He was bound to act with fidelity and to subordinate his personal interest to the interest of the company should there be a conflict. He was required at all times to exercise the utmost good faith toward the corporation. His position is treated in the same way as that of a trustee or guardian and he is not permitted to assume a position inconsistent with this relation. The evidence in this case abundantly demonstrates that defendant failed to act in good faith and unselfishly, but was animated by motives of self-interest if not by revenge against his benefactors. He sought individual profit at the expense of his principal, grossly violated a trust relationship, and committed a flagrant breach of duty. The law will not tolerate and emphatically condemns such conduct. [Proctor v. Farrar, 213 S. W. (Mo. Sup.) 469, 475; Brooker v. Trust Co., 254 Mo. 125; Hill v. Gould, 129 Mo. 106, 112; Keokuk Northern Packet Line v. Davidson, 95 Mo. 467, 473; Farwell v. Pyle-Nat. Headlight Co., 289 Ill. 157, 124 N. E. 449, 452; 14A C. J.. pp. 97, 98, 121.]

In addition to the above consideration the good will of a business is property which the law protects. The good will of the partnership business conveyed to the company by defendant and his partners, and its increment, became a part and parcel of the assets of the corporation. Defendant had no right to injure it. [Pope-Turbo v. Bedford, 147 Mo. App. 692, 698; Milling Co. v. Hanebrink, 247 Mo. 212, 221.] In this case it is not wholly a question as to whether defendant had a right to engage in a competing business after he had severed all

relation with the company, but is primarily a question of his duty and obligation to refrain from injuring a company of which he was president and a director. An injury of any character would be prohibited in the absence of other adequate remedy such as the facts in this case show.

We see no merit in the further insistence that the decree interferes with the right of other persons, not parties to this suit, to contract with the defendant. It will be noted that defendant was enjoined from soliciting orders for pumps, pumping equipment and accessories from the plaintiff's customers. This restraint in no way applied to his relationship with any one else and no one was indirectly deprived of the right to employ him as their agent if they so desired. It was not an undue restraint upon the rights of third parties to carry on business in the territory in question. Defendant was the author of his own disqualification and third parties cannot complain, and are not complaining, because his misconduct has caused restraint to be placed upon him. The decree restraining him from interfering with plaintiff's customers was properly entered.

Defendant's next contention is that the decree is broader than the pleadings in that there is no geographical limit to the restraint placed upon defendant and that the decree should be modified to prohibit defendant's operations only in the states of Kansas, Oklahoma, and the western half of Missouri, the territory described in the petition. We do not see that defendant is harmed in this respect. The prayer was for specific and general relief. The fair intendment of the bill is for protection to trade and custom everywhere. Plaintiff is entitled to any relief justified by the evidence. [McQuitty v. Steckdaub, 190 S. W. (Mo.) 590, 592, and cases cited.] We think the petition, the prayer, and evidence broad enough to justify the decree. Further, the evidence in this case tends to show that the only territory in which plaintiff operated was in the states of Kansas and Oklahoma and the western half of Missouri, and there is no evidence that plaintiff had any customers outside of that territory or that the defendant is in effect restrained any place beyond the limits described.

It is finally contended that the injunction was made effective for an unreasonably long period. Considering the nature and character of the business in which plaintiff was engaged and the time and expense necessarily required to obtain and establish trade and permanent customers, it does not appear to us that three years is too long a period within which to debar defendant from interference. The trial court saw the witnesses, heard their testimony, and we think exercised sound discretion in fixing the terms of the decree. On account of defendant's attitude, his conduct, and his testimony in this case of an avowed purpose to do the things which would accomplish financial injury to plaintiff, he is in no position to re-

270

quest leniency or a modification of this decree to a shorter term of restraint.

Upon the whole case we are satisfied that the trial chancellor reached a wise and just conclusion and that the decree should be affirmed. The Commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The decree is affirmed. All concur, except *Trimble, P. J.,* absent.