**OPIE BRUSH COMPANY, a corporation, Respondent,**

v.

**Hugh F. BLAND, Appellant.**

**No. 24614.**

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1966.

Guy A. Magruder, Jr., Terrell, Van Osdol & Magruder, Kansas City, for appellant.

Don M. Jackson, Jackson, Wade & Barker, Kansas City, for respondent.

BLAIR, Judge.

■ This is an appeal from a decree enjoining the appellant, Hugh F. Bland, a former first vice-president, sales manager and director of the respondent, Opie Brush Company, a corporation, from competing with it. The record does not affirmatively disclose that the amount in dispute, independent of all contingencies, is in excess of $15,000.00. We have jurisdiction. Sec. 477.040, V.A.M.S.; Jackson County Public Water Supply Dist. No. 1 v. Ong Aircraft Corp., Mo., 388 S.W. 893; Warmack v. Crawford, Mo., 192 S.W.2d 406; McCaskey v. Duffley, 335 Mo. 383, 73 S.W.2d 188; 8 Missouri Digest, Courts ■

The relevant allegations of the petition follow: Opie Brush Company is a corporation engaged in manufacturing and distributing janitorial supplies and equipment. Its principal place of business is in Jackson County, Missouri. It operates throughout a much larger territory. The defendant, Hugh F. Bland, is a stockholder, the first vice-president and a director of the corporation. Until January 1, 1966, he was also the corporation's general sales manager. He resigned as general sales man-

ager effective on that day. Over a long period of time and by the expenditure of large sums of money and large amounts of time the company has developed a favorable business name in Kansas and Missouri as well as in other parts of the United States. By advertising, personal solicitation and other methods it has, at great expense, acquired many customers and has established profitable trade relations particularly in Missouri and Kansas. The good will of the company is a valuable asset. It has operated at a profit. The value of the good will and of the business of the company cannot be definitely stated or ascertained. While Bland was acting as a director, stockholder, officer and general sales manager of the company he had complete access to, and knowledge of, the company's trade secrets, methods of doing business, full and complete knowledge of its confidential cost, overhead and profit figures and full and complete knowledge of its list of customers and prospective customers. Since resigning as general sales manager, he has been using the information so acquired to the detriment of the company's business by employing it to obtain for himself "business which was created and developed" while he was general sales manager and an officer and director of the company. He is continuing to do so. He has been personally soliciting business from the company's customers and is continuing to do so. He has stated that it is his intention to employ the knowledge acquired while acting in the described capacities to obtain the business "which rightfully belongs to the plaintiff company and thus to destroy the good will of plaintiff and its value as a going concern." He has "obtained business from and made sales to many of plaintiff's customers since January 1, 1966", the day he resigned as general sales manager, "said sales being so made by defendant while owing the duty of a fiduciary to the plaintiff company". It is alleged that "unless defendant is restrained and enjoined from soliciting plaintiff's customers and selling to them, it will suffer irreparable injury and damage" and it has no adequate remedy at law.

The prayer of the petition is for a decree restraining Bland "from interfering, directly or indirectly, with the trade relations of plaintiff, from in any way using any of the information which he obtained while vice-president, director and general sales manager" of the corporation "for the purpose of competing with plaintiff and from selling or offering to sell any product similar to the products sold by plaintiff to any of plaintiff's customers." A temporary order restraining Bland was entered on February 11, 1966. A hearing to determine whether this order should be dissolved was commenced on February 23, 1966. During the course of this hearing the parties requested the trial court to consider the presentation they were then making as one to determine whether a permanent injunction, rather than a temporary one, should be ordered by the court. This was done. Following the hearing, the trial court entered a decree, in accordance with the prayer of the petition, enjoining the defendant for a period of two years from February 24, 1966. Following entry of the decree, the trial court, on defendant's motion, amended it by reducing the life of the injunction from the original period of two years to a period beginning February 24, 1966, and expiring on January 1, 1967. The defendant's motion for a new trial was duly filed, presented and overruled. He appeals.

■ Our duty in adjudging this controversy on this appeal is to review the cause both on the law and the evidence and to reach our own conclusions, always taking into account the superior opportunity of the trial court to judge the credibility of the witnesses. Yet we cannot substitute our own conclusions on the evidence and set aside the decree unless we determine that it is clearly erroneous. Civil Rule 73.01, V.A.M.R.; Schertz v. Blocher, Mo. App., 288 S.W.2d 385, 391; National Surety Corporation v. Fisher, Mo., 317 S.W.2d 334, 339.

■ Appellant contends "that the trial court erred in entertaining this suit and

granting any relief because the action had not been instituted by proper authority of respondent's board of directors." It is undisputed that five members of the seven member board of directors did meet together and did agree that this suit should be instituted before it was commenced. Whether or not this action by these five board members was legally sufficient is now beside the point. That the company was entitled to injunctive relief from Bland's conduct we will presently demonstrate. What appellant is actually arguing is that the corporation, in this instance, did not have legal capacity to bring this suit because, as he says, a formal meeting of the *entire* board of directors was not held with a majority authorizing the suit. Civil Rule 55.15 provides: "When a person desires to raise an issue as to the legal * * * capacity of any party to sue * * *, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Civil Rule 55.31 authorizes legal capacity to sue to be challenged by motion "whether or not the same may appear from the pleadings and other papers filed in the cause." Civil Rule 55.37 provides that a party waives all objections and all other matters available to him by motion by failure to assert the same within the time provided by Civil Rule 55.36, except "(1) Failure to state a claim upon which relief may be granted, (2) Failure to state a legal defense to a claim, and (3) lack of jurisdiction over the subject matter." Civil Rule 55.36 fixes the time allowed for making motions. Appellant made no attempt to comply with any of these rules. When the evidence at the hearing developed that only five members of the board of directors had met and agreed that this suit should be instituted, he did not even make an oral motion raising his claim that respondent had no legal capacity to bring this suit, and he made no suggestion concerning it at all. Actually, he did not file any motion of any nature and he filed no answer or any other sort of pleading. He stood by and allowed the proceeding to go for-

ward until it resulted in a decree against him. Then he made the first suggestion of this complaint to the trial court and he made it for the first time in his "Motion to Vacate Judgment and Decree, or in the Alternative, for a New Trial." We cannot now exempt him from the consequences of gambling on the outcome of the suit in this way and allow him, when the gamble is lost, to complain that he lost it. Clearly he waived his right to complain and his complaint is without merit. Due to his failure to raise his complaint in a timely way, or at all until after the entry of the decree, the decisions he cites, Meyer v. Bristol Hotel Co., 163 Mo. 59, 63 S.W. 96; Merrill v. Davis, 359 Mo. 1191, 225 S.W.2d 763, and Coates v. Parchman, Mo.App., 334 S.W.2d 417, are plainly inapplicable. Although we decline to decide his claim of lack of legal capacity to sue for the reason announced, if we did so, we would incline to the logic of Rothman & Schneider, Inc. v. Beckerman, 2 N.Y.2d 493, 161 N.Y.S.2d 118, 141 N.E.2d 610, 64 A.L.R.2d 895, which reviews decisions from various jurisdictions and reaches a result contrary to the one appellant would have us reach.

In his brief, the appellant, Bland, tells us that "with relatively minor exceptions the facts upon which the trial court granted injunctive relief are not in dispute" and our review of the record discloses that this is correct. The Opie Brush Company, respondent, has been engaged in manufacturing and distributing industrial chemicals, janitorial supplies and equipment since 1883. Bland first became associated with the company in 1938. At that time John T. Opie was the sole proprietor. In 1951 Bland became the company's sales manager and that same year he began buying into the business. Eventually his holdings rose to a 40% interest. The business then became a partnership with Opie holding a 60% interest and Bland a 40% interest. In November, 1956, Opie and Bland incorporated the business. Sixty per cent of the stock was issued to Opie and forty per cent to Bland. Both Opie and Bland became officers and

directors of the corporation and both have remained in such capacities until this date so far as this record shows. Opie was president and Bland was first vice-president. Bland continued as sales manager. In 1962 Bland sold 15% of his stock to Opie, retaining a 25% stock interest. In July, 1961 the personal and business relationship between Bland and Opie began to deteriorate. Suffice it to say that Bland disapproved of some of the policies of the corporation and deemed his compensation as sales manager inadequate. With Bland's views Opie disagreed. There is much evidence in the record relating the details of these differences, but the view we take of this controversy does not require us to recite it. In December, 1965, Bland advised Opie that he was leaving the company and resigned his position as sales manager. On January 3, 1966, he took employment with Missouri-Kansas Chemical Company, a direct competitor of Opie Brush Company.

In addition to manufacturing and distributing its own industrial chemicals, janitorial supplies and equipment, the company also contracted with other companies to supply such products to it and it then labeled those products with its private brand name and sold them as its own products. During Bland's many years with Opie Brush Company and while sales manager, first vice-president and director he not only became familiar with the company's suppliers but he was the person who worked with their representatives in formulating products for sale by his company and in preparing the private brand names. He had full and complete knowledge of the company's costs and overhead. He was the person responsible for preparing competitive bids for the company on contracts to be let on bid by corporations, institutions and persons desiring to purchase janitorial supplies and equipment. All of this information was confidential and secret and a knowledge of it could be of substantial advantage to competitors for it would aid them in underbidding the company. As sales manager Bland had his own list of customer accounts. He had

called on these accounts for many years prior to resigning from the company and associating himself with Missouri-Kansas Chemical Company. These accounts were the best customer accounts of the Opie Brush Company and Bland always reserved the right to call on them personally and sell them himself. When he left the company and went to work for Missouri-Kansas Chemical Company he took with him not only his confidential knowledge of the company's affairs but also the list of customers he had serviced for Opie Brush Company over the years as sales manager. He delivered this list to Missouri-Kansas Chemical Company for its use. Written notice was sent to these accounts by Missouri-Kansas Chemical Company advising them that Bland had disassociated himself from Opie Brush Company and associated himself with Missouri-Kansas Chemical Company. In each instance the notice was addressed to the officer or employee of the addressee whom Bland had been personally contacting for sales while selling for Opie Brush Company. He began at once to call on the accounts he had brought with him and to sell those he could the same kind of products he had been selling them for Opie Brush Company. He was continuing to do so at the time the temporary restraining order was issued and he announced that he intended to continue unless enjoined from doing so. He stated that he intended to acquire all of the customers of the Opie Brush Company he could for the Missouri-Kansas Chemical Company unless restrained by the court. He testified that he was actively seeking to get the business of all of those customer accounts for Missouri-Kansas Chemical Company and that he knew that he was putting himself personally in a better position at the expense of the Opie Brush Company. Reviewing the list of sales he had made for Missouri-Kansas Chemical Company from the time he began his employment until the date of the restraining order, he admitted that only five of all of the sales made by him during that period had been to purchasers other than the Opie Brush Company customers. All

of the facts we have recited stand admitted on this record. Moreover, the president of Missouri-Kansas Chemical Company testified that a salesman who brings with him to his company a list of established customers he has served for many years is of value to him as a salesman on that account and that it was his experience in the business that the man who contacts the customers is usually the man who gets and keeps their business if he is a well qualified salesman. He considered Bland a highly qualified salesman in the business conducted by Opie Brush Company and Missouri-Kansas Chemical Company. This testimony stands unchallenged.

■ A few days before the trial, Bland's deposition was taken and he stated that he had not resigned as first vice-president and director because he wanted to protect his 25% stock interest in the company. This statement was entered in the record during the trial as an admission against interest. During the trial Bland testified that he was still first vice-president and a director of the company and that he had not tendered any resignation. He sought to allay the force of this fact, first, by testifying he had changed his mind about desiring to remain an officer and director, second, by offering as evidence on the second day of the trial a letter to Mr. Opie, as president of the company, attempting to resign as first vice-president and director, and third, by saying that his position as a director had never been of any significance or worth because Opie, as president, really ran the business and he had always been inactive and without influence. Bland was the only witness who testified his position as a director was of no consequence. On the other hand, there was evidence contradictory of his deprecatory evaluation of his position as a director. Mr. Alexander, also a director of the company, testified that Bland had been an active member of the board of directors and that he attended and participated in all meetings held by the board during his own tenure as a director. Furthermore, the record establishes that in 1961 Bland so vigorously opposed the acquisition of a new building by Opie and his wife in their own names, which they proposed to lease to the company, that the proposal was abandoned. We need not decide whether Bland is right in his legal theory that a non-participating or inactive director is exempt from the rules governing active directors, for the trial court found the issues generally against Bland and thus found on the evidence just recited that he was an active director. We adopt the conclusion of the trial court on this issue as our own. In doing so, our action draws strength, we think, from Bland's admitted betrayal of the trust he owed the company and his violation of his duty to it not to disclose and use for his own profit, and to the detriment of the company, its confidential information which he acquired as its sales manager, first vice-president and director. For he bore a fiduciary relation to the company and he had no right to utilize confidential information acquired by him while in a stategic position of trust for his own profit and to the company's detriment. 8 Missouri Digest, Corporations, ■ 19 Am.Jur.2d, Corporations, Sec. 1282, p. 690. His admission of his gross misconduct strongly reflects on the credibility of his testimony that he was never more than a non-participating or inactive director.

■ There is still such a thing as loyalty owing from an officer and director of a corporation to the corporation and its stockholders and a duty resting on the courts to compel it when it is not voluntarily forthcoming. We are satisfied with our decision in Southwest Pump & Machinery Co. v. Forslund, 225 Mo.App. 262, 29 S.W.2d 165, and hold that it governs this controversy. Although Bland argues that it is distinguishable, we hold on this record that it is altogether indistinguishable. He argues around the superficies of this ruling but never comes to grips with the ruling itself. He cannot. For it describes and condemns his conduct with such analogy that all he says about its superficial dif-

ferences simply cannot begin to argue down its undeniable applicability here. Forslund was president and a director of a corporation. He admitted that while serving in those capacities he decided "to obtain all business that he could from any of the customers of the plaintiff, and that he knew that this would hurt the plaintiff, and gave, as his excuse, 'they tried to hurt me' ". He had had a disagreement with the corporation concerning his compensation and was dissatisfied with the outcome. He resigned as president of the corporation but did not resign as director. The corporation learned that its customers proposed to cancel their contracts with it; that Forslund was entering into contracts with those customers; and that he had opened his own competitive business. It sued for injunctive relief. At the time of the trial in the circuit court, Forslund was representing the principal customers obtained and previously represented by the corporation during the time he was its president and a director. During the course of the trial, upon advice of counsel, he resigned as a director. Nevertheless, the trial court entered a decree enjoining Forslund for three years from interfering with the trade relations, contracts and accounts which the corporation had with its customers and restrained him "from making use of or disclosing any knowledge or information gained or obtained from plaintiff * * * while president and director of the company." It also restrained him for three years "from soliciting orders, either directly or indirectly, for pumps, pumping equipment and accessories, heat regulators and other similar machinery from the plaintiff's customers" which it had prior to the date of the decree. This court affirmed. We said: "During all this time and even into the trial of the case, defendant was a director of plaintiff company, and shortly previous thereto, when he was president, general manager, and a director, he determined to obtain for himself, and against the interest of the company, a valuable part of its property. When he could not obtain an arrangement to his own liking within the company, he set out to obtain for himself the agency of the principal companies represented by the plaintiff, and began efforts to obtain the trade and customers of the plaintiff and declared his intention to continue in such a course with the knowledge on his part that his action would operate to the great financial injury of the corporation. As a director and as president of the corporation he occupied a fiduciary relation to the company and to its stockholders. His position was one of trust. He was bound to act with fidelity and to subordinate his personal interest to the interest of the company should there be a conflict. He was required at all times to exercise the utmost good faith toward the corporation. His position is treated in the same way as that of a trustee or guardian, and he is not permitted to assume a position inconsistent with this relation. The evidence in this case abundantly demonstrates that defendant failed to act in good faith and unselfishly, but was animated by motives of self-interest if not by revenge against his benefactors. He sought individual profit at the expense of his principal, grossly violated a trust relationship, and committed a flagrant breach of duty. The law will not tolerate and emphatically condemns such conduct."

We believe there is no substance in Bland's theory that the trial court had no authority to grant an injunction "on the basis of his alleged fiduciary duty as a director because appellant had resigned any and all connections with respondent prior to the decree." Our decision in Forslund necessarily took the resignation of the director during the trial into account and did not regard it as precluding injunctive relief to prevent a future betrayal of his trust as a fiduciary. We adhere to this view. Neither Forslund's nor Bland's fiduciary duty could be renounced at will by the termination of his directorship. Confidential information acquired by a director of a corporation while acting as its fiduciary cannot be made public property merely because he dissevers himself from the corporation. "'It is as sacred and inviolable

after as before the expiration of its term.' " Raines v. Toney, 228 Ark. 1170, 313 S.W. 2d 802, 809; Trice v. Comstock, 8 Cir., 121 F. 620, 625, 61 L.R.A. 176. We hold that by attempting to resign during the trial Bland could not set himself free to continue at pleasure in the future the betrayal of his trust as a fiduciary that he had practiced in the past.

We have examined all of the decisions he cites to convince us that we should reverse this decree. An analysis of them would only prolong this opinion unduly. Sufficient it is to say that none authorizes a ruling different than the one we make and some of them actually state the principles upon which we ground our ruling.

The judgment of the trial court was clearly right and it is affirmed.

All concur.