CLARK–LAMI, INC., a Corporation,
Plaintiff-Appellant,

v.

Mary B. CORD, Executrix of the Estate of
William Holliday Cord; Mary B. Cord,
Individually, Defendants-Appellants,

Mutual Insurors, Inc., a Corporation; Stock
Insurors Agency, Inc., a Corporation; and
Robert D. Whiteman, Defendants.

No. 53701.

Supreme Court of Missouri,
Division No. 1.

May 12, 1969.

738

Stemmler & Stemmler, James A. Stemmler, St. Louis, for plaintiff-respondent.

Chopin & Boisaubin, Alfred L. Boisaubin, St. Louis, for defendants-respondents.

HOUSER, Commissioner.

Clark-Lami, Inc. sued William H. Cord, his wife Mary and others in Count I for an injunction; in Count II for $50,000 actual and $100,000 punitive damages for loss of business and income, and in Count III for $50,000 damages for breach of contract. William H. Cord died and proceedings were continued for and against him in the name of his executrix, codefendant Mary Cord. Acting individually and as executrix she filed a counterclaim. In Count I she asked for the construction of a contract and for judgment thereon for $4,100 and interest and in Count II for an accounting and adjudication of rights. Plaintiff filed two motions for summary judgment on its fourth amended petition and a motion for summary judgment on

defendants' counterclaim. The former were overruled; the latter sustained. Defendant Mary Cord, individually and as executrix, filed a motion to dismiss plaintiff's fourth amended petition for failure to state a cause of action [sic] upon which relief can be granted. This motion was sustained. Plaintiff appealed from that order and from an order overruling plaintiff's two motions for summary judgment. Mary Cord, individually and as executrix, appealed from the order sustaining plaintiff's motion for summary judgment on defendants' counterclaim.

Does the petition state a claim?

Plaintiff appealed from the order overruling its motions for summary judgment on its petition but briefed only the question whether the court erred in dismissing the petition for failure to state a "cause of action." On plaintiff's appeal, accordingly, we consider only the question whether the fourth amended petition states a claim upon which relief can be granted.

Count I alleged the following: Plaintiff is a corporation engaged in the business of selling insurance policies to the public; an insurance agency. Defendants Mutual Insurors and Stock Insurors Agency are competing corporations. Defendant Robert Whiteman is president of Stock Insurors Agency. Mr. Cord was a stockholder, and until February 18, 1965 a director and until December 23, 1965 an officer of plaintiff corporation. His wife Mary was a stockholder. From January 13, 1965 Mr. Cord and the other defendants performed a series of acts in derogation of plaintiff's rights. Mr. Cord violated his duties as director, former officer and employee, and Mary Cord violated her duties as stockholder, as follows: On January 13, 1965 Mr. Cord, during the lunch hour and in the absence of the other principal stockholders, entered plaintiff's main office and took, purloined, converted and carried away plaintiff's file of expiration cards containing the names of its customers and expiration dates of policies of insurance plaintiff had in force for such customers. This was confidential information valuable in the conduct of plaintiff's business; the personal property of plaintiff. Mary Cord conspired with and accompanied Mr. Cord in removing the cards and thereafter in abstracting therefrom the names and expiration dates. The Cords then used the information to contact plaintiff's customers at "the crucial renewal time" and at other times, to secure renewals of insurance policies for their own personal benefit and profit, thereby taking business away from plaintiff, to its detriment and in violation of their fiduciary relationships to plaintiff and its other stockholders. Mr. Cord contracted with competing insurance agencies for placement with them of plaintiff's contracts of insurance; advised plaintiff's customers that they were no longer associated with plaintiff and henceforth to forward all premiums to Mr. Cord personally at his home instead of to plaintiff, to whom said premiums were actually due; advised insurance companies and customers that plaintiff was insolvent and going bankrupt and that plaintiff had given false information to insurance companies to induce them to issue policies at a lower rate; requested insurance companies and customers to cease doing business with plaintiff and to do business with Mr. Cord; requested plaintiff's customers to turn over to him their policies of insurance with plaintiff; obtained possession of some policies in this manner and caused them to be cancelled; advised plaintiff's policyholders that various insurance companies with which plaintiff placed its policies were withdrawing from the State of Missouri and that said policies would no longer be in force, and entered into business relationships with plaintiff's customers and others so as to compete directly with plaintiff.

Mr. Cord was the principal stockholder of a corporation which merged with plaintiff corporation. One of the assets of that corporation was the Stern Insurance account, which became the property of plaintiff as a result of the merger. During 1965 Mr. Cord communicated with former Stern customers, knowingly and falsely

representing that Mrs. Stern was still in business and working with Mr. Cord, in an effort to procure and keep the insurance business of Mrs. Stern's former customers, thus causing plaintiff loss of business.

Defendants have undertaken to destroy confidence in plaintiff's financial condition and the management capabilities of plaintiff's officers and managers and to destroy plaintiff's business reputation. The Cords have taken away and appropriated the majority of all of the assets, business, property interest and good will that Mr. Cord brought to plaintiff on the merger, and of the good will and business of plaintiff in general. Among other things, in order to harass and embarrass plaintiff, the Cords wrongfully and maliciously requested a bank, holder of a note of Mary Cord which in the merger plaintiff had assumed to pay, to demand payment of the note. This interference with contractual relations between plaintiff and its customers has caused them to cease doing business with plaintiff. Defendants' interference was without justification and excuse and was malicious, willful, wanton and reckless.

Mutual Insurors, Stock Insurors Agency and defendant Whiteman knowingly conspired with and assisted the Cords in the solicitation and procurement of insurance accounts and business of plaintiff so taken from the expiration cards; accompanied and assisted Mr. Cord in calling upon and soliciting plaintiff's customers for new and renewal business; directed billing and collection notices to plaintiff's customers; contracted for brokerage facilities and secretarial service to facilitate mass solicitation of insurance accounts belonging to plaintiff; assisted in the cancelling of policies of plaintiff's customers at a short rate in order to place the business through Mr. Cord and solicited competing insurance carriers, all to the detriment of plaintiff's relations with its carriers and in deliberate violation of plaintiff's property rights in the renewals.

The prayer of Count I was for an injunction to restrain defendants from doing the things complained of and to require Mary Cord to sell and surrender her stock and that of Mr. Cord to plaintiff at a price to be fixed by the court.

Count II incorporated the allegations in Count I by reference and alleged that as a result of defendants' unlawful acts plaintiff has been caused to lose customers, business and income and has been damaged in the sum of $50,000, for which it prayed. Plaintiff further prayed for $100,000 punitive damages on the basis that defendants' acts were malicious, willful, wanton and reckless and done with intent to harm plaintiff's business and its stockholders.

Count III incorporated the allegations in Count I by reference and alleged that the Cords breached an implied contract that the property of a merged corporation should be the property of the survivor corporation, by taking property away from plaintiff, to its damage in the amount of $50,000, for which it prayed.

The fourth amended petition states a claim upon which relief can be granted. Confidential information compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit. A court of equity through the injunctive process will protect against the abuse of such information by a former employee. 42 Am.Jur.2d Injunctions § 114. Where an employee, officer, director or stockholder of a corporation, who is given access to such information in confidence, adopts and uses it for his own private benefit and personal profit to the exclusion and detriment of the corporation he may be enjoined at the instance of the corporation. An officer, director or stockholder of a corporation in particular is subject to restraint in this connection because of the position of trust he occupies and the fiduciary relationship he holds and enjoys with the corporation and the stockholders, imposing upon him the duty to exercise good faith toward the corporation and to subordinate his own self-

ish interests to those of the corporation where they conflict. Southwest Pump & Machinery Co. v. Forslund, 225 Mo.App. 262, 29 S.W.2d 165, 169; Opie Brush Company v. Bland, Mo.App., 409 S.W.2d 752; Charles Reilly Optical Co. v. Burke, Mo. App., 41 S.W.2d 909. This rule finds special application in the case of lists of policyholders owned by an insurance agency showing the names and addresses of its insureds, the types of policies and coverages owned by them, the articles insured, and the premiums and expiration dates. Such lists, which are of vital interest, concern and value to an insurance agency, are surrounded by the protection afforded by the injunctive process. Ballagh v. Polk-Warren Mutual Ins. Ass'n, 257 Iowa 1334 (1965), 136 N.W.2d 496, 497; Morrison v. Woodbury, 105 Kan. 617, 185 P. 735; J. L. Cooper & Co. v. Anchor Securities Co., 9 Wash.2d 45, 113 P.2d 845; Gutleber v. Hahl, 28 Misc.2d 525, 209 N.Y.S.2d 461.

◼ The petition alleges facts bringing Mr. Cord within the ambit of these rules, demonstrating that in violation of his fiduciary and trust duties he used confidential lists for his own personal aggrandizement and personal profit, to the detriment of the corporation. Because of his death Mr. Cord is not subject to the injunctive arm of the equity court. The executrix of his estate, however, is a party, and the court, having acquired jurisdiction in injunction, may retain it to award damages. 42 Am.Jur.2d Injunctions § 305. A claim against Mary Cord is stated on the basis of her complicity in the wrongdoing and her position as stockholder. A claim against Mr. Whiteman and the corporate defendants is stated on the basis of conspiracy with the Cords, active assistance in solicitations of plaintiff's customers from the improperly obtained lists with full knowledge of the circumstances and the charge that the acts of all of the defendants were joint and several or as agent, and were ratified by all defendants. 43 C. J.S. Injunctions § 148a(4), p. 754; idem, § 148(b), p. 756; J. L. Cooper & Co. v. Anchor Securities Co., supra.

◼ The petition states a claim upon which relief can be granted against all defendants upon another basis, namely, a tort claim for damages for interference with business relations between plaintiff and its insurance customers. Downey v. United Weatherproofing, Inc., 363 Mo. 852, 253 S.W.2d 976, holds that one who maliciously induces a person to breach his contract with another may be held liable to the latter for the damages resulting from such breach. And see Coonis v. Rogers, Mo. Sup., 429 S.W.2d 709, where liability was held to attach on proof that defendant, with full knowledge of the situation, induced or acquiesced in the cancellation, breaking and repudiation of existing contracts and taking them over for his own personal use and benefit. Numerous acts and inducements by defendants to plaintiff's customers to discontinue business relations with plaintiff are pleaded.

### Plaintiff's right to summary judgment on Mary Cord's counterclaim

In Count I of her counterclaim, filed both individually and as executrix of Mr. Cord's estate, Mary Cord asked for a construction of the rights and obligations of the parties with reference to a promissory note and for judgment against plaintiff for $4,100 and interest thereon, on the basis of these allegations: Mary Cord executed the original note, payable to a bank, and put up her own collateral as security therefor. At the same time she assigned all her rights, liabilities and proceeds of the loan to Mr. Cord, who obligated himself to Mary Cord to make all principal and interest payments thereon. He used the proceeds to purchase an insurance agency business known as the Stern Account. When the corporation in which Mr. Cord was interested merged with plaintiff corporation the latter (in July, 1961) for a good and valuable consideration assumed and agreed to pay the principal and interest on the note. Payments to and including September 26, 1963, were made on the note. Thereafter plaintiff refused to make further payments, which have been made by

Mary Cord. In December, 1964 the principal stockholders of plaintiff corporation (Messrs. Cord, Clark and Lami) agreed upon the purchase by the corporation of Mr. Cord's stock, but the agreement was not honored by Messrs. Clark and Lami, who attempted summarily to discharge Mr. Cord as an employee, locked him out of his office, refused to make available to him plaintiff's files, mail, books or records, and physically ushered him from the premises.

Plaintiff's motion for summary judgment on Count I of Mary Cord's counterclaim alleged the following: When Mr. Cord's corporation merged with plaintiff corporation there was a written agreement whereby the latter acquired all of the good will, business, accounts and assets of the former, including the Stern Account, and assumed the former's liabilities, including the promissory note. All salaries, dividends, and expenses of plaintiff corporation were paid out of commissions on plaintiff's total business, including that acquired from Mr. Cord's corporation and including the Stern Account. After January 15, 1965 Mr. Cord and Mary Cord "failed and refused to permit plaintiff to continue in the quiet and uninterrupted possession and enjoyment of the insurance and bond business brought to plaintiff by the aforementioned merger, but undertook to exercise dominion and possession of the business of the customers, so brought to plaintiff, by means of William Holliday Cord's solicitation of such customers as if such customers were his own, personal customers instead of customers of plaintiff, and succeeded in getting almost all of such customers to stop doing business with plaintiff, and instead, to place their business with William Holliday Cord in his personal, individual capacity, and said William Holliday Cord retained for himself all of the earnings of all of the business solicited and obtained by him as aforesaid and deprived the plaintiff of all such earnings." The consideration for plaintiff's assumption of liability on the note was that the customers in each corporation, including the customers of the Stern Account, would become and remain customers of plaintiff, and that the business and earnings of the Stern Account be and continue to be earnings rightfully belonging to plaintiff, and not the earnings of any employee who might solicit or secure such business. Mr. Cord's acts and conduct "constituted a breach of the terms and conditions of the aforesaid merger and of the Agreement" and thereby Mr. Cord "forfeited, for himself, his estate, his personal representatives and/or the transferee of the stock, including cross-claimants, all right to enforce the performance, on the part of plaintiff, of any assumption of liability for the payment of the aforementioned promissory note of Mary B. Cord."

In Count II of her counterclaim Mary Cord, as executrix of the estate of Mr. Cord, alleged that on August 1, 1962 a resolution was adopted by all the stockholders of plaintiff corporation whereby on the death of either Messrs. Clark, Cord or Lami the corporation would purchase the stock of the deceased party for $\frac{1}{6}$ of the net earnings of the corporation for the 60 months preceding the death; that Mr. Cord died on January 11, 1967 owning 475 shares of stock; that demand was made upon the corporation to purchase Mr. Cord's stock but plaintiff denied that Mr. Cord had any further rights in the stock and refused to honor the agreement. Counterclaimant prayed for an accounting of the net earnings from January 11, 1967, payment of $\frac{1}{6}$ per cent thereof to her as the executrix, with interest, and that the court construe the legal rights and obligations of the parties with respect thereto and declare that plaintiff is obligated to pay under the corporate resolution.

Plaintiff's motion for summary judgment on Count II of the counterclaim realleged the acquisition by plaintiff of the good will, business and assets of Mr. Cord's corporation; the payment of salaries, expenses and dividends by plaintiff out of the combined earnings of the two merged corporations; the failure and refusal after January 15, 1965 of the Cords to permit

plaintiff to enjoy the business brought into the merger from Mr. Cord's corporation, because of their solicitation of the customers and retention of the earnings of the business; their succeeding in getting almost all customers to stop doing business with plaintiff, and depriving plaintiff of all such earnings. It was further alleged that the consideration for the merger of the two corporations and the agreement entered into in connection therewith was that the customers, business and earnings of the two corporations become, and remain that of the surviving corporation (plaintiff); that the corporate resolution which is the basis of Count II of the counterclaim "expressly provided that plaintiff corporation should be obligated to purchase the stock of decedent stockholder William Holliday Cord only 'if the business of the corporation shall be continued following the death of the deceased party' "; that "the business of the corporation" was the business of the corporation at the time of the resolution, which included the business and customers brought into plaintiff as a result of the merger, and that it was a condition to the continuing force of the agreement represented by the resolution that the business of plaintiff continue to include the business brought into plaintiff by Mr. Cord's corporation. It was further alleged that as a result of his acts and conduct Mr. Cord breached the agreement and forfeited for himself, his estate and his personal representatives all right to enforce the performance of the agreement.

The depositions of Mr. and Mrs. Cord and Mr. Whiteman were filed. No counteraffidavits were filed.

■ The motion for summary judgment on the counterclaim was erroneously sustained. There remain in the case genuine issues of material fact. In Count I of the counterclaim Mary Cord alleged that in July 1961 plaintiff corporation assumed and agreed to pay the principal and interest due on the promissory note which she executed in favor of a bank; that plaintiff made payments thereon to and including September 26, 1963; but that thereafter plaintiff refused to make further payments thereon. An exhibit showing payments of principal and interest verifies this allegation, which is not denied by plaintiff in the pleadings, by affidavit or otherwise. In the absence of explanatory facts it would appear that plaintiff breached its assumption agreement more than a year before the events surrounding the discharge of Mr. Cord and the activities on his part of which plaintiff complains. If plaintiff first breached the contract; if its breach was material and substantial and if plaintiff's breach was not waived and is not to be excused for reasons not shown on this record, a legal question would arise whether plaintiff can count upon Mr. Cord's later activities as an excuse for plaintiff's failure to make the payments due on the note.

■ In Count I of her counterclaim Mary Cord alleged that Messrs. Cord, Clark and Lami in December, 1964 entered into an agreement for the purchase by the corporation of Mr. Cord's stock and that Messrs. Clark and Lami failed to honor that agreement. It is not made clear whether the latter were acting for the corporation or for themselves in making this agreement, nor how or in what manner the agreement was dishonored, nor whether it was rescinded by mutual agreement, nor how or in what manner this agreement was related to the liability of plaintiff under paragraph 20 of the merger agreement (the subject of Count II of the counterclaim).

In Count I of the counterclaim Mary Cord alleges that Messrs. Clark and Lami attempted "summarily" to discharge Mr. Cord and in effect "threw him out" of the office. There are no allegations by which it may be determined whether the discharge of Mr. Cord was for cause. If his discharge was without lawful cause the question arises whether this constituted a material breach of the merger contract and, if so, whether and how plaintiff's lia-

bility under Count II of the counterclaim is thereby affected.

If the foregoing constituted breaches of the contractual arrangements between the parties the question arises whether there were circumstances surrounding the situation of the parties or actions taken by Mr. Cord which served to excuse plaintiff from the legal consequences. All of these questions of fact are left unresolved on this record. They are questions which require investigation at a hearing and trial and cannot be decided on summary proceedings.

Furthermore, plaintiff's defense to the counterclaim is not based upon clearly alleged and clearly defined contractual terms, but depends for its validity upon the adoption of plaintiff's *interpretation* of the writings. The merger agreement provides for the transfer to plaintiff of the good will, business and assets of the Cord corporation, which plaintiff construes as meaning "accounts," and particularly as including the Stern Account. This interpretation, however, is not compelled. What was transferred by the merger agreement is a question of interpretation of facts which must first be determined. Such a question is not determinable on a motion for summary judgment. It "should be resolved only upon an interpretation of the contract in the light of the surrounding circumstances, applicable customs and usages, the parties' own interpretation of the contract and other evidence bearing on the question of its meaning." Cure v. City of Jefferson, Mo.Sup., 380 S.W.2d 305, 312; E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo.Sup., 413 S.W.2d 167 [7, 8].

Finally, the factual basis of Mary Cord's counterclaim is necessarily intertwined with the factual issues presented by plaintiff's petition. Summary judgment is not a proper remedy in such a situation. Mary Cord, who on remand must defend against the charges in plaintiff's petition, should not be cast out as counterclaimant, under the harsh summary judgment procedure, when there must yet be a trial of the es-

sential factual issues presented. See Taylor v. Rederi A/S Volo, 3 Cir., 374 F.2d 545, 550 [4].

The motions for summary judgment on Counts I and II of the counterclaim do not demonstrate that plaintiff was entitled to judgment as a matter of law.

The orders overruling plaintiff's two motions for summary judgment on its petition are affirmed. The orders sustaining Mary Cord's motion to dismiss plaintiff's fourth amended petition for failure to state a "cause of action," and sustaining plaintiff's motion for summary judgment on Mary Cord's counterclaim, are reversed. Cause remanded for further proceedings consistent with this opinion.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.