Otis P. CARDWELL, Theresa Babineaux, and Tri-Star Trophy Company, Appellant,

v.

WILSON TROPHY COMPANY OF FORT WORTH–DALLAS, INC., Appellee.

No. 18578.

Court of Appeals of Texas, Fort Worth.

Oct. 7, 1981.

Rehearing Denied Nov. 4, 1981.

Thomas P. Earls, Dallas, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, Ralph H. Duggins, Fort Worth, for appellee.

Before HUGHES, BROWN and HOLMAN, JJ.

## OPINION

HUGHES, Justice.

Otis P. Cardwell, Theresa Babineaux, and Tri-Star Trophy Company have made an interlocutory appeal to the order of the trial court which granted a temporary injunction to Wilson Trophy Company of Fort Worth-Dallas, Inc. The order restrained appellants from:

"(1): Engaging in any business or commercial activity, directly or indirectly, in any capacity (whether owner, partner, shareholder, agent, employee, consultant or otherwise) which is similar to or competitive with the business and commercial activities conducted by the Plaintiff WILSON TROPHY COMPANY, anywhere in Dallas County or Tarrant County, Texas;

"(2): Selling, trading, purchasing or marketing or offering to sell, trade, purchase or market any trophies, awards, medals or plaques or other similar items anywhere in Tarrant County or Dallas County, Texas; and

"(3): Maintaining and/or operating an office or other facility anywhere within Dallas County or Tarrant County, Texas, for the purpose of marketing, selling, trading or purchasing products or services competitive with WILSON TROPHY COMPANY."

We affirm.

Appellants, in their first four points of error claim that there is no basis in the pleadings, the evidence, or the trial court's findings that can justify issuance of the temporary injunction.

We disagree. Most of the cases cited by appellants concern restrictive employment covenants such as the one involved in *Weatherford Oil Tool Company v. Campbell*, 340 S.W.2d 950 (Tex.1960). We are not concerned here with such covenants. Rather we are concerned with those principles of equity which have to do with unfair competition and breaches of fiduciary duties by corporate officers.

Appellees alleged in their petition that Babineaux and Cardwell were members of the Board of Directors of the Wilson Corporation; that Babineaux was President of such corporation and that, as such officers of the corporation, they had fiduciary duties to same. Further, they were required by law "to use reasonable care in the exercise

of the trust and confidence" of such positions.

Appellees further alleged that appellants willfully conspired to deprive appellee corporation of business, assets, and property to form a competing company. This was alleged to have resulted in appellee suffering a dissipation of assets, loss of potential business to others (including appellants) all to appellee's "irreparable damage."

The prayer in the petition asked for several items, but pertinent here is the request for the entry of a "temporary injunction, and, upon final hearing hereof, a permanent injunction, restraining the Defendants from entering, operating or carrying on any business which may be competitive with the Plaintiff in Dallas County or Tarrant County for three years from the date this lawsuit was filed."

The trial judge had evidence before him upon which he could justify his ordering the injunction. Mr. Charles Wilson was in the wholesale trophy business. He set up retail trophy companies in seven cities, including Fort Worth. Each such company had different shareholders plus Charles Wilson as a shareholder. Babineaux and Cardwell accepted Wilson's suggestion, and in the fall of 1978 the three organized Wilson Trophy Company of Fort Worth-Dallas, Inc. The first Board of Directors included Wilson, Cardwell, and Babineaux. The doors opened around March 1, 1979 with Babineaux as President. She was responsible for the management of the corporation.

Cardwell accepted the responsibility of preparing and filing all tax information and agreed to assist in the business operation.

Babineaux and Cardwell tried to buy Wilson's shares in May, 1979 and were turned down. In June, appellants leased a store space; bought fixtures and a stock of trophies; opened a bank account; and filed an assumed name certificate. They created the Tri-Star Trophy Company (apparently a partnership). In addition, they commenced seeking business from Wilson Corporation customers for Tri-Star and did, in fact, sell trophies to some of them, using Wilson Corporation order forms, checks, and other Wilson Corporation property. Three months passed before Wilson learned of this state of affairs, during which time Babineaux drew her salary from Wilson Corporation and developed Tri-Star's business with the help of Cardwell.

We hold that the trial court granted appellee what it prayed for: the injunction here appealed.

Judge Jordan had adequate evidence before him for his findings that appellants diverted business from appellee to their own partnership; that they converted Wilson corporate assets and used them for their own partnership; and were guilty of mismanagement, gross breaches of fiduciary duties and unfair competition; and that such misconduct was ongoing, damaging appellee in the past and continues to the present time.

There is no question that corporate officers and fiduciaries are "held 'in official action, to the extreme measure of candor, unselfishness, and good faith.'" *International Banker's Life Insurance Company v. Holloway*, 368 S.W.2d 567 (Tex.1963).

There is also no question but that the actions of appellants violated their obligations to the Wilson Corporation that bound them "to act with fidelity and to subordinate his personal interest to the interest of the company ..." *Southwest Pump & Machinery Co. v. Forslund*, 225 Mo.App. 262, 29 S.W.2d 165 (1930); *Opie Brush Company v. Bland*, 409 S.W.2d 752 (Mo.App., 1966).

We overrule points of error I through IV.

Point of Error V states that the temporary injunction granted in this case went further in restraining appellants than the prayer in appellee's pleadings. Without discussing, we hold that the temporary injunction tracks the pleading sufficiently to sustain our overruling Point of Error V, which we now do.

Affirmed.

JORDAN, J., recused himself and did not participate.